[Civ. No. 16040. Second Dist., Div. One. Nov. 19, 1948.]

RETA FAE KNOX, Appellant, v. ALBERT H. KNOX et al., Respondents.

Cook & Johnson and Siley J. Shannon for Appellant.

Sherman & Sherman, Glenn M. Still and Chas. R. Thompson for Respondents.

WHITE, J.—This is an appeal from a judgment dismissing an order to show cause directed to defendant Albert H. Knox.

The foregoing order to show cause commanded said defendant to appear before the court to show cause why he should not be required to pay plaintiff reasonable sums for attorney's fees, court costs and for the support and maintenance of said plaintiff and the minor children of the parties during the pendency of an action for separate maintenance instituted by plaintiff against the aforesaid defendant. The defendants, Mary Leggett, Frank Payne, and Elton Cherry were joined as parties defendant in the action upon the ground that certain properties of plaintiff and defendant Albert H. Knox, in which the former claims a community interest, were transferred to such other defendants.

By her action for separate maintenance, plaintiff sought to declare null and void a decree of divorce granted her husband, defendant Albert H. Knox, by the Second Judicial District Court of the State of Nevada, in and for the county of Washoe, on May 3, 1944, on the ground that neither of said parties to said action were bona fide residents of the State of Nevada at any time prior to the granting of said decree, and to rescind a property settlement agreement entered into during the pendency of the Nevada action, and approved by the Nevada court in said action. The rescission was grounded on the claim of fraud in the alleged concealment of assets by defendant husband.

The factual situation revealed by the record shows that plaintiff herein and her husband, defendant Albert H. Knox, were married in Pennsylvania on July 2, 1923. They separated in 1935, since which date they have not lived together as husband and wife. They have two daughters, one now over 21 years of age, and the other approximately 17 years of age.

In 1938, while Mrs. Knox was living in Florida and Mr. Knox in California, they attempted, without success, to work out a property settlement agreement. In those negotiations plaintiff Mrs. Knox was represented by Attorney Maguire of the firm of Maguire and Voorhis of Orlando, Florida, and the husband was represented by the law firm of Sherman and Sherman of Los Angeles, California. By agreement between the parties at that time, defendant husband paid the fees of the Florida attorneys for Mrs. Knox, but it appears that it was definitely understood between the parties that the attorneys represented Mrs. Knox and that their obligation was strictly to her. When the foregoing negotiations for a property settlement agreement proved futile they were abandoned.

On March 7, 1944, defendant herein, Mr. Knox, filed suit in the aforesaid Nevada court against Mrs. Knox for divorce. Summons was issued on the complaint and Mrs. Knox was personally served with the complaint and summons at Orlando, Florida, on March 14, 1944.

By his complaint for divorce in the Nevada court, Mr. Knox alleged that he was, and for more than six weeks preceding the filing of said complaint had been a bona fide resident of and domiciled in the county of Washoe, State of Nevada, during all of which time he had been actually present and domiciled in the city of Reno, Nevada. After alleging the date and place of his marriage and the issue thereof, the

existence of certain real and personal property, some of which was allegedly his separate property and some of which was community property, and his willingness to pay a reasonable sum for the support and maintenance of Mrs. Knox and the minor children, the complaint alleged that the parties "have lived separate and apart, without cohabitation, for three consecutive years immediately preceding the commencement of this action."

Upon being served with process, Mrs. Knox engaged the law firm of Maguire, Voorhis and Wells, and Attorney Maguire of that firm, who had previously represented Mrs. Knox, undertook to again represent her.

At the hearing on the order to show cause, now engaging our attention, the attorney representing Mrs. Knox stated, "that through said attorneys (Maguire, Voorhis and Wells) she secured an attorney by name of L. D. Summerfield, a resident of Reno, Washoe County, Nevada, to act for her in connection with said proceedings and to effect a property settlement."

Defendant Knox herein, was represented in the Nevada action by the law firm of Thatcher and Woodburn of Reno, Nevada, and plaintiff herein, Mrs. Knox, was represented by Attorney L. D. Summerfield of the same place.

Following commencement of the Nevada divorce proceeding by Mr. Knox, considerable negotiations ensued concerning the execution of a property settlement agreement between the respective parties. Certain demands were made by Mrs. Knox through her Florida and Nevada attorneys. When these demands were finally acceded to a property settlement agreement was arrived at and signed. The agreement was drafted and prepared by the Florida attorneys for Mrs. Knox. It provided for the distribution of certain property and for the payment by Mr. Knox to Mrs. Knox of the sum of $5,000 in cash and the further sum of $150 per month. That Mr. Knox would pay for the education of the two minor daughters, and in addition, would give to each the monthly sum of $25 for spending money. It was also provided that Mrs. Knox be made the irrevocable beneficiary under a policy of insurance in a fraternal society, and that the two daughters be named as the irrevocable beneficiaries in a policy of insurance issued by the New York Life Insurance Company in the sum of $5,000. The agreement also provided that Mr. Knox would be obligated to pay the premiums on such policies.

The existence of the Nevada divorce action then pending against Mrs. Knox was recognized in the property settlement agreement, in connection with which the agreement provided:

"This agreement is made for the purpose of settling the respective property rights of the parties hereto and of removing the subject matter thereof from the field of litigation.

"*The Wife shall forthwith cause an appearance to be entered in the aforesaid pending action in Nevada through Nevada counsel of her own selection.* The Husband shall pay attorneys' fees for the Wife in the maximum sum of $750.00, which sum shall include any and all legal expenses which the Wife may have incurred in Nevada, Florida, or elsewhere in connection with the preparation of this agreement and all negotiations prior thereto and for the trial of the pending Nevada divorce action.

"This agreement shall not be construed by anyone as a consent of either of the parties hereto to their separation nor as a condonation by either of any conduct of the other nor as waiver by either of any right or cause of action or defense arising by reason of the conduct of the other. *It is nevertheless understood that divorce proceedings have been instituted by the Husband against the Wife in the Second Judicial District Court of Nevada, in and for the County of Washoe, and that this agreement is executed for the purpose of effecting a settlement of the respective property rights of the parties hereto in the event a divorce should be decreed. It is of the essence of this agreement that the settlement herein provided for shall not become operative in any manner nor shall any of the Recitals herein become binding upon either party unless a decree of divorce between the parties shall be entered in the pending Nevada action.* The settlement herein provided shall become immediately effective and operative in the event of and upon the entry of a decree of divorce between said parties in said pending Nevada action." (Emphasis added.)

The record reflects the fact that after the filing of the Nevada divorce action by Mr. Knox and prior to the time the same was at issue, there was considerable correspondence between the Florida and Nevada attorneys for Mrs. Knox relative to the legal status of the latter and what would be her position if she appeared in the action and denied her husband's allegation of domicile contained in his complaint, or what would be her legal status should she permit her default to be taken in the Nevada divorce action. The Florida attorneys for Mrs. Knox had advised her Nevada attorney that

she denied that her husband was a bona fide resident or domiciled in Washoe County, Nevada, as alleged in paragraph 1 of his divorce complaint. Her Florida attorneys sent to her Nevada attorney the sum of $10, ''with the thought in mind that, if necessary, and if it seems appropriate in the light of all the facts outlined at the time, an answer can be filed in Mrs. Knox's behalf.''

The extent of the discussion by correspondence is reflected in the affidavit of Glenn M. Still, one of the attorneys for Mr. Knox, from which it appears that on March 15, 1944, Attorney Maguire, one of Mrs. Knox's attorneys, wrote to her Nevada attorney advising that ''Mrs. Knox denies the *bona fide* residence of Mr. Knox in Washoe County, Nevada, as alleged in paragraph 1'' of his divorce complaint.

On March 24, 1944, the Florida attorney for Mrs. Knox wrote her Nevada attorney as follows:

''For the time being we do not wish to weigh the question of a possible contest of the jurisdiction of the Nevada Court. We will, in the next few days, write you further with respect to that. Should research justify the conclusion it may be that Mrs. Knox will want to contest jurisdiction, present all the facts, and if necessary appeal the case to the Supreme Court of the United States. That is a matter to be determined and one about which we will endeavor to write you not later than March 31st, earlier if possible.''

On March 25, 1944, Mrs. Knox herself wrote a letter to her Nevada attorney referring to the letter of her Florida attorney just quoted, and giving to her Nevada attorney various facts and data pertaining to the marital status and background of the parties hereto.

On March 27, 1944, the Nevada attorney for Mrs. Knox wrote a letter to her Florida attorneys reading in part as follows:

''Before entering any appearance on behalf of Mrs. Knox and submitting her to the jurisdiction of the Nevada court there are several items to be considered:

''1. You appreciate that if Mrs. Knox submits to the jurisdiction of the Nevada court and litigates jurisdiction and other items, she will be bound by any decree rendered and that decree will be entitled to recognition under the full faith and credit clause of the United States Constitution (see *Davis v. Davis,* 305 U.S. 32; 59 S.Ct. 3; [83 L.Ed. 26]; 118 A.L.R. 1518).

"2. Mrs. Knox has the option of allowing the matter to go to a default decree and later making a collateral attack on the decree. (See *Williams* v. *North Carolina,* 317 U.S. 287 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273].)"

Then follows a lengthy discussion of the Williams case above mentioned, and as to the rights of a nonresident defendant who does not submit to the jurisdiction of the Nevada court, and permits the divorce decree to be obtained by default, to collaterally attack such decree in the domicile of such nonresident defendant.

Mrs. Knox's Florida attorney replied to this letter under date of March 31, 1944, discussing the contents thereof. It was with this letter that the check for $10 was forwarded to cover fee for filing an answer "if it seems appropriate . . . ." Also attached to the letter was a lengthy memorandum containing the views of the Florida attorney for Mrs. Knox on the question of jurisdiction and as to what, in the opinion of the writer, would be the position of Mrs. Knox if she did file an answer and if she did not do so. A copy of this letter was mailed to Mrs. Knox.

On May 31, 1944, Attorney Summerfield of Reno, Nevada, wrote to the Florida attorneys for Mrs. Knox concerning the property settlement agreement, in part as follows:

"I am pleased to report that Mr. Knox and his counsel finally acceded to everything you asked for. *The agreement was executed as you drew it,* and Mr. Knox also signed the deed which you have marked 'A' and which you so much desired to secure." (Emphasis added.)

Following the signing of the property settlement agreement by Mr. and Mrs. Knox, the attorney for the latter, pursuant to the terms of the aforesaid property settlement agreement that "the wife shall forthwith cause an appearance to be entered in the aforesaid pending action in Nevada through Nevada counsel of her own selection," filed her answer in the Nevada divorce action.

By her answer Mrs. Knox admitted all of the allegations hereinbefore set forth in the complaint filed by her husband, save and except the allegation therein contained that he was a bona fide resident of and domiciled in the county of Washoe, State of Nevada, which averment she denied.

Service of the answer was admitted and verification thereof was waived on May 3, 1944, by the attorneys for Mr. Knox.

We pause here to give consideration to appellant's contention that her Nevada attorney was without authority

to enter an appearance for her in the Nevada divorce action. This claim is without merit. Such an appearance was provided for in the property settlement agreement prepared by her own attorneys in Florida and hereinabove quoted. Added to that is the fact that appellant, wife herein, received the $5,000 in cash, the property settlement, and all payments provided for in the agreement. Trial of the divorce action in Nevada was had on the same day the answer of Mrs. Knox was filed. There is evidence in the record that her Nevada attorney was personally present in court throughout the trial, participated therein, and questioned Mr. Knox thereat. This, however, is denied by appellant in the complaint filed by her in the separate maintenance action now before us.

Following the trial findings of fact and conclusions of law were made by the court, wherein it was determined "that plaintiff (Mr. Knox, responded herein) is now, and for more than six weeks preceding the filing of the complaint in this action has been a bona fide resident of and domiciled in the County of Washoe, State of Nevada; that plaintiff, during all of said time has been actually present and domiciled in the City of Reno, County and State aforesaid."

Judgment was rendered upon the findings of fact and conclusions of law, wherein it was decreed that Mr. Knox, plaintiff in said action, be granted "a decree of absolute divorce herein, forever dissolving the bond of matrimony existing between plaintiff and defendant," and the foregoing property settlement agreement received in evidence was approved, adopted, confirmed, and "the plaintiff and defendant respectively, are hereby ordered to abide thereby and to perform the obligations thereof."

No appeal was taken from the Nevada divorce decree and it has become final.

Mr. Knox thereafter remarried, and according to his affidavit made upon information and belief, Mrs. Knox has also remarried.

From May 3, 1944, when the Nevada decree of divorce was granted, Mr. Knox complied with all the provisions of the property settlement agreement, and Mrs. Knox received and accepted the fruits thereof until the later part of 1946, when she came to Los Angeles and instituted the present action against Mr. Knox for separate maintenance, alleging that the Nevada decree was invalid, and citing him into court

on an order to show cause why he should not be ordered to pay her alimony, attorney's fees and costs of suit.

When said order to show cause came on for hearing, appellant herein (Mrs. Knox) was called as a witness, whereupon respondent, Mr. Knox, introduced into evidence exemplified copies of the divorce proceedings in Nevada, consisting of the complaint, the answer, the findings of fact and conclusions of law and the judgment and decree of divorce in the case of *Albert H. Knox,* Plaintiff, v. *Reta Fae Knox,* Defendant, together with an exemplified copy of the summons in said cause and affidavit of service on defendant therein, Reta Fae Knox, showing that she was served in Orlando, County of Orange, State of Florida, all of which were received in evidence by the court, and objected to the introduction of any evidence on said order to show cause and also moved the court to dissolve the order to show cause upon the main ground, "First, that the judgment of divorce in the State of Nevada, which is in the record now, is entitled to full faith and credit under the United States Constitution, Article IV, Sec. 1, I believe, —and also under the Act of May 26th, 1790, 1 Stat. at Large, 122, Chapter 11, as amended revised statutes, and Section 905, 28 U.S.C.A., Section 687, which is the Federal Congressional Act promulgated under the full faith and credit clause of the Constitution and that this court must give full faith and credit to the judgment of divorce in the State of Nevada and the defendant Knox has the constitutional right to have that judgment of Nevada be given in this court full faith and credit, which, of course, would mean that it cannot be attacked in this proceeding."

At said hearing appellant herein offered to prove, among other things, that at the time of the filing of the Nevada divorce action and for several years prior to that date, she was and had been living at Orlando, Florida, with her two minor daughters, the issue of the marriage, that she resided there at the request of her husband. "That she always attempted to maintain the relationship of husband and wife and to preserve the home, that on numerous occasions she offered to come to California with him but that he always dissuaded her." Then followed admission of service upon her of the summons and complaint in the Nevada divorce action, of her employment of aforesaid attorneys in Florida who "had previously been employed by Albert H. Knox, as her attorneys in connection with an effort to effect a property settlement. And that the property settlement was never effected." That

through her said attorneys she secured the services of Attorney Summerfield at Reno, Nevada, "to act for her in connection with said proceedings and to effect a property settlement. That she was without funds which fact was known to the attorneys above mentioned and that they were paid their fees and costs by her husband." Appellant then offered to prove that the property settlement was finally negotiated and contained the provision that she should "forthwith cause an appearance to be entered in the aforesaid pending action in Nevada through Nevada counsel of her own selection." That her husband should pay her attorney's fees in the maximum sum of $750.

She further offered to prove that she had no independent means of support and no means whatever to go to the State of Nevada to contest the action. That through her attorneys she requested her husband to furnish money for the purpose of going to Nevada, but that said request was never complied with. And that "she was advised by her counsel in Nevada, Mr. Summerfield, by telegram that due to the fact the pending negotiations had been completed there was no necessity for her to appear, and that he (her husband) was not going to send any money." That she never instructed Attorney Summerfield to enter any appearance in the Nevada action other than as set forth in the aforesaid property settlement agreement. That she never saw or verified any answer in such cause or instructed Attorney Summerfield to file any answer, and that she had no knowledge whatever as to what, if any, issues were raised by any such answer. That prior to the institution of the Nevada divorce action her husband had resided and had been engaged in business in the city of Los Angeles, California, for a number of years. That the service of the complaint upon her was the first intimation she had that he claimed to be a resident of Nevada. That within a few days after obtaining the Nevada decree, her husband returned to the city of Los Angeles where he continued to live and engage in business. Then follows an offer to prove by testimony of respondent husband, under section 2055 of the Code of Civil Procedure, certain facts with reference to his residence and domicile in California, that he was in business in Los Angeles, that he never disposed of his business, never registered to vote in Nevada and that within two or three days after the decree of divorce had been granted in Nevada he returned to Los Angeles where he has

continued to live up to the time of the institution of this action.

When the matter was submitted, the court sustained respondent's objection to the introduction of any evidence upon the order to show cause, granted respondent's motion to dismiss the order to show cause and rendered judgment accordingly.

By her amended complaint which contained two causes of action, upon which the challenged order to show cause was issued, appellant herein alleged substantially the allegations which, as hereinbefore set forth, she offered to prove at the hearing on the order to show cause.

Appellant first contends that temporary alimony, suit money and attorneys' fees may be awarded on an order to show cause in an action by the wife collaterally attacking a divorce decree obtained in another jurisdiction.

We entertain no doubt but what under some circumstances, and upon a proper showing, a wife should not be denied alimony and attorneys' fees to enable her to prosecute an action to determine the validity and effect of a decree of divorce obtained in another state. Nevertheless, it is firmly established in our law that the power to award support, attorneys' fees and suit money grows out of the marital relation. Hence, if the Nevada divorce was valid, appellant was no longer the wife of respondent Knox and he no longer owed her any marital duty. (*Colbert* v. *Colbert*, 28 Cal.2d 276, 279 [169 P.2d 633].) It therefore became the duty of the court in the instant proceeding, to determine, as a matter of fact, in the exercise of a sound judicial discretion, whether there was reasonable probability of appellant herein successfully attacking the validity of the Nevada divorce, and whether the instant proceeding was instituted by appellant wife in good faith. The question presented to us is therefore, whether the court, in the light of the circumstances here present, abused its discretion in refusing to award appellant counsel fees, suit money and alimony pending a final determination of the controversy. If the court was justified in holding that the courts of this state must give full faith and credit to the Nevada decree, in that it was obtained in accordance with the laws and practice of that state, was obtained without fraud, and that respondent husband was a bona fide resident of and domiciled in Nevada, and that appellant wife was a resident of the State of Florida, had been served with process and appeared in the

action in Nevada, then the court was justified in holding that the dissolution of the marriage between the two parties herein extinguished the subject matter which forms the jurisdictional prerequisite for a court to order support, costs and counsel fees pendente lite in an action for separate maintenance.

We are satisfied that upon the facts and circumstances before the court in the case at bar no other conclusion could have been arrived at other than the one reached by the trial court. It seems clear to us that the trial court was justified in finding that the Nevada court had jurisdiction of the subject matter in the sense that it had power to grant or withhold a decree of divorce. It had jurisdiction over the person of the plaintiff in that action (respondent Knox herein) in consequence of the complaint which he had filed. It had jurisdiction over the defendant in that action (appellant herein) by her voluntary submission to its jurisdiction by an attorney who, under the facts present in the instant proceeding, was clearly authorized to appear for her.

We are persuaded that the cases of *Sherrer* v. *Sherrer*, 334 U.S. 343 [68 S.Ct. 1087, 92 L.Ed. 1429], and *Coe* v. *Coe* (334 U.S. 378 [68 S.Ct. 1094, 92 L.Ed. 1451]) decided by the U. S. Supreme Court on June 7, 1948, are decisive of the question with which we are here confronted, which is, whether under the circumstances presented by this case, the decision rendered in the Nevada divorce proceeding may, consistent with the requirement of full faith and credit, be subjected to collateral attack in the courts of this state in an action for separate maintenance brought by the defendant in the original Nevada divorce proceedings. In the Sherrer case, *supra*, at page —— [92 L.Ed.], it was said:

". . . Insofar as cases originating in the federal courts are concerned, the rule has evolved that the doctrine of *res judicata* applies to adjudications relating either to jurisdiction of the person or of the subject matter where such adjudications have been made in proceedings in which those questions were in issue and in which the parties were given full opportunity to litigate. The reasons for this doctrine have frequently been stated. Thus in *Stoll* v. *Gottlieb*, 305 U.S. 165, 172, 83 L.Ed. 104, 109, 59 S.Ct. 134, 38 Am. Bankr.N.S. 76 (1938), it was said: 'Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin

litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision, as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first.'

"*This Court has also held that the doctrine of res judicata must be applied to questions of jurisdiction in cases arising in state courts involving the application of the full faith and credit clause where, under the law of the state in which the original judgment was rendered, such adjudications are not susceptible to collateral attack.*" (Emphasis added.)

In the case now engaging our attention, appellant was afforded full opportunity to contest the jurisdictional issue and in fact did contest that issue by filing an answer in which she denied that respondent herein was a bona fide resident of the State of Nevada. By entering a general appearance in the Nevada proceeding, filing a pleading tendering an issue, the very matter she now seeks to contest in the courts of this state, retaining an attorney who represented her and participated in the Nevada proceeding, appellant herein cannot be heard to subsequently attack in the California courts, a decree rendered under such circumstances and valid in the state where it was rendered. As in the Sherrer case, *supra,* the finding of the requisite jurisdictional facts in the Nevada divorce case was made in proceedings in which appellant herein appeared and through her counsel participated.

We find nothing in the cases cited by appellant which militates against the proposition, ". . . that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree." (*Sherrer* v. *Sherrer, supra,* at page —— [92 L.Ed.].)

Appellant's contention that she never authorized her Nevada attorney to enter an appearance other than as set forth in the property settlement agreement is answered by the statement that in such agreement, prepared by her own Florida attorneys she, as heretofore pointed out, agreed to enter such an appearance and forwarded the filing fee for the making of such appearance. Her claim that her mere

general appearance through the filing of an answer did not result in an adversary proceeding in which all parties are heard, is answered by the following language of the United States Supreme Court in the case of *Sherrer* v. *Sherrer, supra*, at page —— [92 L.Ed.] : "If respondent failed to take advantage of the opportunities afforded him, the responsibility is his own. We do not believe that the dereliction of a defendant under such circumstances should be permitted to provide a basis for subsequent attack in the courts of a sister State on a decree valid in the State in which it was rendered."

Concerning appellant's contention that it was at all times her intention to go personally to the State of Nevada and defend against the divorce action, but, that she was without financial means to do so; that she requested her Nevada attorney to procure from her husband funds with which to make said trip, and was advised that her husband refused to supply her with any funds for that purpose, it may simply be said that upon the entry of the divorce decree in Nevada on May 3, 1944, appellant shortly thereafter admittedly received the sum of $5,000, and in addition thereto has been receiving the sum of $150 per month. Yet, possessed of these funds, she nevertheless made no attempt to challenge the validity of the Nevada decree by appeal in the courts of that state, but continued to accept the benefits of the foregoing property settlement agreement until October 24, 1946, when she filed the separate maintenance action upon which the order to show cause now engaging our attention was issued.

Under the factual situation surrounding this case it cannot be successfully urged that the proceedings before the Nevada court were in any degree violative of the procedural due process or that appellant herein was denied a full opportunity to contest the issue of respondent's Nevada domicile.

Were the courts of California, under the facts here present, to permit an attack upon the Nevada decree, which would again put in issue respondent's Nevada domicile, and the consequent jurisdiction of the courts of that state, we would be asserting a power which could not be reconciled with the requirements of full faith and credit.

For the foregoing reasons it follows that the judgment should be affirmed. It is so ordered.

York, P. J., and Doran, J., concurred.