LUCIE BODIE, APPELLANT, V. EDWARD BATES, APPELLEE.

FILED APRIL 3, 1914.  No. 17,601.

1. **Courts:** EQUITY JURISDICTION. "The district courts of this state, being courts of general equity jurisdiction, are not limited in the exercise of such jurisdiction by statute." *Cochran v. Cochran*, 42 Neb. 612.

2. ——: ——. Where the application of a technical rule of construction would defeat a clear equity, the rule should not be applied.

Bodie v. Bates.

3. ———: ———: Consent as Bar. Where consent to the exercise of judicial power, in a manner not authorized by statute, is relied upon as a bar to equitable relief demanded in another state, it should be made to clearly appear that the *res* of the equity so demanded was within the contemplation of the consenting parties, and was considered by the court when it acted upon their consent. Such consent and the action of the court based thereon should not be extended, by construction, so as to defeat a clear equity of either of the consenting parties in the courts of the other state.

4. Divorce: Alimony: Estoppel: Foreign Decree. Where it clearly appears that in a suit for divorce in a sister state, under the statutes of which the court did not have jurisdiction to take cognizance of real estate then owned by the husband in this state, nor, without consent of the parties, to consider the same in fixing the amount of alimony, and no such consent is affirmatively shown to have been given, and it also clearly appears that the court in allowing alimony to the wife did not take cognizance of or consider such real estate in fixing the amount of such allowance, but allowed the wife a reasonable sum only, based upon the property owned by the husband situated within the jurisdiction of that court, the judgment so rendered is not a bar to an independent suit in this state by the wife, after divorce, to recover a reasonable amount of alimony out of the real estate of the husband situated in this state; nor will the fact that she accepted and has retained the allowance made to her by the judgment of the other court, out of the property of her husband situated within the jurisdiction of that court, estop her from prosecuting such suit.

5. ———: ———: ———: ———. *Eldred v. Eldred*, 62 Neb. 613, and *Cochran v. Cochran*, 42 Neb. 612, examined, and *held* to be at variance with each other; and, upon due consideration, and for the reasons stated in the opinion, *Cochran v. Cochran* is adhered to, and *Eldred v. Eldred*, in so far, but in so far only, as it is in conflict therewith, is overruled.

APPEAL from the district court for York county: EDWARD E. GOOD, JUDGE. *Reversed.*

*Gilbert Brothers* and *S. P. Davidson*, for appellant.

*Field, Ricketts & Ricketts* and *W. L. Kirkpatrick*, contra.

Bodie v. Bates.

FAWCETT, J.

From a judgment of the district court for York county, sustaining a general demurrer to her petition and dismissing her suit, plaintiff appeals.

The petition alleges that the parties were married in January, 1889, while they were residents of York county, in this state; that soon after their marriage defendant became addicted to drinking intoxicating liquors to excess, and was guilty of continued drunkenness and cruelty until about March 1, 1911, when defendant commenced a suit for divorce from plaintiff in the chancery court of Benton county, Arkansas, to which county the parties had removed, the alleged grounds of divorce being "indignity, cruelty and infidelity;" that, on being served with summons, plaintiff here, defendant in that cause, filed her answer and cross-complaint, in which she denied the allegations in plaintiff's bill, and alleged as grounds for a divorce and alimony plaintiff's drunkenness and cruel treatment, and set out in general terms the amount and value of plaintiff's property, including lands situated in York county, in this state.  On the trial of the cause the Benton county court found the issues against the plaintiff on his bill and dismissed the same, found for the defendant (plaintiff here), and entered a decree granting her a divorce and restoring to her her maiden name of Lucie Bodie.  The petition further alleges that the Arkansas court found that defendant was indebted to plaintiff in the sum of $2,500 for borrowed money; that defendant's personal property "was of the value of about $4,000, and that said court of chancery did not have any jurisdiction of or over the property of complainant which was situated outside of the state of Arkansas, and that, in consequence of that fact, in determining the amount of alimony to be granted the defendant in that suit, he was limited and prohibited from taking into the account the above mentioned property situated in York county, Nebraska;" that the laws of Arkansas then in force, after stating the grounds for divorce, further provide:  "Where the divorce is granted to the wife each party is restored to all property not disposed

of at the commencement of the action, which either party
obtains from or through the other during the marriage,
and in consideration or by reason thereof; and the wife
so granted a divorce from the husband shall be entitled to
one-third of the husband's personal property absolutely,
and one-third of all lands of which her husband is seised
of an estate of inheritance, at any time during the mar-
riage, for her life, unless the same shall have been released
by her in legal form." The petition alleges that the sec-
tion of the statute just quoted "is the only provision for
allowance of alimony to the wife in case of divorce." It is
further alleged that when the case was tried in the Ar-
kansas court during the first days of March, 1911, and
when the same was determined, as a part of the finding and
decree entered therein, it was ordered and decreed that
defendant in that suit should recover from plaintiff the
$2,500 borrowed money, one-third in value of plaintiff's
personal property, and the then present value of her life
interest in one-third of the value of a house and lot then
owned by plaintiff, and that these items aggregated the
sum of $5,111, which sum was allotted and decreed to her,
together with certain articles of furniture which originally
belonged to her; that this was the only allotment made
to or for defendant in that suit; that that court was lim-
ited and prohibited in taking into account, in determining
the amount of the allowance to the defendant there (plain-
tiff here), the lands lying in York county, Nebraska, or
their value, and that the only amount of alimony allowed
plaintiff was the sum of $2,611, being the balance of the
sum of $5,111, after deducting the $2,500 borrowed money.
The petition then sets out the value of the York county
land at $48,000, and alleges that the amount of alimony
allotted by the Arkansas court is inadequate and insuffi-
cient for the support of plaintiff, and is not such fair
proportion of the property of defendant, owned by him
at the date of the Arkansas decree, as plaintiff then was
and still is entitled to, in view of the circumstances sur-
rounding the case, "and the services and hardships endured
and performed by this plaintiff for this defendant." The

prayer is that the court take cognizance of the whole matter, and that on a full and final hearing it decree to plaintiff a reasonable sum out of the value of defendant's property in York county, "as and for alimony to which she is entitled in addition to the said amount so allowed in and by said court of chancery of Benton county, Arkansas," also for attorney's fees and costs, and for an injunction restraining defendant from disposing of his York county land until the allowance made by the court is paid. Plaintiff attached to her petition and made a part thereof the decree entered by the Arkansas court.

In the decree it is recited that the court, "being well advised in the premises, doth dismiss plaintiff's bill for want of equity, and doth grant a divorce on the cross-bill of the defendant herein. It is ordered, adjudged and decreed by the court that defendant, Lucie Bates, have and recover of and from the plaintiff, Edward Bates, the sum of $5,111, in full of alimony and all other demands set forth in the cross-bill, which judgment is rendered by the consent of the plaintiff, on condition that no appeal will be taken by defendant from the judgment or decree herein rendered." It then assigns to Mrs. Bates certain specific articles of silverware and household furniture. The decree then provides that, to secure payment of the judgment, a lien be declared on lot 9, block 8, Beauchamp's addition to the city of Siloam Springs, Benton county, Arkansas, and that as additional security the defendant place with the clerk of the court four notes of $280 each, one note for $89.60, one for $112, "the same having been given by one Shockey to Edward Bates, one note for $500 and two notes for $40 given by Ida and W. S. Tibbs to Edward Bates, one note for $400, given by Richard O. Forman to Edward Bates, one note for $500, given by Norris and Yonkers, being a total of $2,801.60, which are by the said Edward Bates, in open court, deposited with the said clerk, all of which notes are secured by mortgages." It was then provided in the decree that Bates might sell and dispose of any or all of the property, including real estate and notes, but in making sale he should deposit the proceeds with the

clerk until he had paid the full sum of $5,111, with interest at 6 per cent. It further provided that Mrs. Bates have restored to her her maiden name of Lucie Bodie.

The grounds upon which defendant based his demurrer in the court below, and seeks to defend the judgment of the court in sustaining the same are: (1) That the Arkansas judgment is a complete bar to a recovery of further alimony. (2) That plaintiff, having accepted and retained the fruits of the Arkansas decree for alimony, is estopped to repudiate that decree. We will consider these two points in the order named.

An examination of the Arkansas statute above set out shows that in that state no provision is made authorizing a money judgment as alimony. The law expressly declares just what interest the wife shall take in both the real and personal property of her husband, where she is granted a divorce. As to real estate, the provision is that she shall be entitled to "one-third of all lands of which her husband is seised of an estate of inheritance, at any time during the marriage, for her life, unless the same shall have been released by her in legal form." It will not, of course, be contended by any one that under that statute the Arkansas court could have vested in Mrs. Bates, for life, one-third of the lands of which her husband was then seised located in Nebraska. That provision unquestionably refers to lands situated within the jurisdiction of the court. While the decree is not as specific in its findings as set out in plaintiff's petition in this suit, we think it does sufficiently appear from the decree itself that a portion only of the $5,111 allowed the defendant was for alimony, and that the balance of the sum allowed was for borrowed money, as alleged by plaintiff in her petition here. The wording of the decree is that Mrs. Bates should recover the sum of $5,111 "in full of alimony and all other demands set forth in the cross-bill." The term, "and all other demands set forth in the cross-bill," should, in the light of the allegations of plaintiff's petition, as against a general demurrer, be construed as an admission that $2,500 of the amount allowed by the court was for borrowed

money, as alleged. This would leave only $2,611 allowed as alimony. This fact, in the light of the further fact that Bates at that time owned the Arkansas real estate referred to, and notes secured by mortgages aggregating over $2,800, which the court required him to deposit as security for the payment of its judgment, makes it appear to our entire satisfaction that the amount actually allowed by the court for alimony was not more than a fair amount to allow Mrs. Bates out of the property which her husband then owned in Arkansas. In the light of the evidence as to what Bates then owned in Arkansas, it would be idle to claim that that court, in making its allowance, took into account or gave any consideration to the valuable lands then owned by Bates in this state. It is clear, therefore, that, as to the Nebraska land, the rights of the parties were not adjudicated in that action.

It is argued by defendant here that, while the Arkansas court may not have been authorized by statute to enter a money judgment for alimony, it could do so by consent of parties, and that the parties gave such consent. The wording of the decree upon which this argument is based is: "Which judgment is rendered by the consent of the plaintiff, on condition that no appeal will be taken by defendant from the judgment or decree herein rendered." In support of his contention defendant cites *Wood v. Wood,* 59 Ark. 441. In that case a judgment by way of alimony was allowed in the sum of $33,000. On appeal the supreme court of Arkansas said (p. 448) : "In allowing alimony in a gross sum, the court departed from the course usually pursued in such matters, but this was done by consent. She was represented by solicitors, who were acting within the apparent scope of their authority. She has no right to repudiate her acts of record done by them, but she must abide by them, and hold her solicitors responsible, if they were derelict in their duties, or unfaithful to her injury. In rendering a decree in accordance with consent of parties, given by their respective solicitors, no error of law was committed by the court." In the light of that decision, it is argued that the court gave Mrs.

Bates a money judgment by consent, and that in such case the remedy would be, ordinarily, by appeal; but it is also said she could not have appealed that case because the court entered judgment, by consent of plaintiff, on condition that she would not appeal. This contention, so far as it goes, is very plausible. If Mrs. Bates had attempted to appeal from that judgment, it is very doubtful if her appeal would have been sustained; but we do not see the application of the case cited, for the reason that there was nothing in that judgment from which Mrs. Bates needed to appeal. The court had adjudicated everything within its jurisdiction, and, apparently, had awarded her a fair allowance out of Bates' property within the jurisdiction of the court.

It sometimes happens that technical rules of construction stand out, on one side against plain, undeniable justice on the other. In such a case, what is the duty of the court? In our judgment the question admits of but one answer: Where the application of a technical rule of construction would defeat a clear equity, the rule should not be applied. So, therefore, where consent to the exercise of judicial power, in a manner not authorized by statute, is relied upon as a bar to equitable relief demanded in another state, it should be made to clearly appear that the *res* of the equity so demanded was within the contemplation of the consenting parties, and was considered by the court when it acted upon their consent. Such consent and the action of the court based thereon should not be extended, by construction, so as to defeat a clear equity of either of the consenting parties in the courts of the other state. We are, therefore, unwilling to extend, by construction, either the scope of the consent upon which the Arkansas court acted, or the scope of the jurisdiction of that court in acting thereon.

The learned district court undoubtedly felt bound by the opinion of this court in *Eldred v. Eldred,* 62 Neb. 613. In that case the parties were married in Iowa, from which state they removed to Illinois. Subsequently the husband came to this state, leaving his wife and children in Illinois.

The wife applied to the circuit court in that state for a divorce and alimony. Service was had by publication. The husband did not appear. The wife was granted a decree of divorce, and the Illinois residence was awarded to her as alimony. Later on she instituted suit in this state for alimony and for the support of two minor children. A decree was entered dismissing the cause, but without prejudice to a future suit for the support of the children. She appealed. In the opinion it is said (p. 614): "The validity of the Illinois decree is not questioned. The court had jurisdiction of the cause, and the decree granting Mrs. Eldred a divorce, being valid there, is likewise valid here. If there had been personal service upon the defendant in the cause, the decree awarding alimony would be conclusive upon the parties, and a new suit for alimony by Mrs. Eldred could not be maintained. But the Illinois decree having been rendered upon constructive service and without any appearance on behalf of the defendant, the portion of the decree relating to alimony perhaps is of no validity, save as to the property within the jurisdiction of the court pronouncing it. This suit, then, is not for an allowance out of the property of the defendant for her maintenance, as incidental to some other proceeding or relief. No divorce is sought herein. If the decided weight of authority in this country should be followed, alimony could not be recovered in an independent suit. But this court is committed to the doctrine that courts of equity have jurisdiction to allow alimony to a wife as an independent right where no divorce or legal separation is sought. *Earle v. Earle,* 27 Neb. 277. This decision would be decisive of the present case had plaintiff not been legally divorced from the defendant, since in the case cited the plaintiff was at the time the legal wife of the defendant, no divorce having been previously granted, nor was one sought in the proceeding for alimony. The marriage relation that existed between the present plaintiff and defendant has been dissolved by a court of plaintiff's own selection. They are no longer husband and wife. The duty and obligation that once existed to sup-

port and maintain the plaintiff does not now rest upon the defendant. He is no longer her husband, and no legal obligation is imposed upon him to provide for her maintenance; hence there exists no right to alimony." If this decision stood alone in our court, or had been subsequently followed, or if we had never sustained a different theory, we might hesitate to announce · a rule at variance with the one so plainly stated by the learned chief justice who wrote that opinion. In that opinion *Cochran v. Cochran,* 42 Neb. 612, is attempted to be distinguished, but the case is not overruled, nor is the soundness of its holding at all questioned.

As we read *Cochran v. Cochran,* it is at variance with *Eldred v. Eldred;* and as we consider the two, and compare one with the other, we find the variance so decided that we must now determine which we will follow and establish as the rule in this state. We have no hesitancy in deciding this question in favor of *Cochran v. Cochran.* The opinion concedes that in *Earle v. Earle* we have departed from the rule that the allowance of alimony is a mere incident to a suit for divorce, and have awarded alimony in a suit where no divorce was asked. We have held the same in a number of cases. If, therefore, alimony may be allowed in a suit against the husband where no divorce is asked, then alimony is not necessarily an incident to a divorce suit. If it is not an incident to a divorce suit and inseparable therefrom, then in reason it matters not whether the parties are still husband and wife, or whether that relation has been severed by a decree of divorce. The right to alimony does not depend alone upon the duty of the husband to support his wife. It is not based upon her necessities alone. It is an allowance to her, when her husband has proved recreant, of a just proportion of his (or, more accurately stated, their) estate. Hence, it is a right not solely incident to a divorce suit, but a right which this and many other courts have held is enforceable in a separate and independent suit. *Rhoades v. Rhoades,* 78 Neb. 495, and cases cited on page 497, where it is also said: "And it is clear that the dis-

trict courts of this state, being courts of general equity
jurisdiction, are not limited in the exercise of such juris-
diction by statute." *Graves v. Graves,* 36 Ia. 310; *Dan-
iels v. Daniels,* 9 Colo. 133; *Galland v. Galland,* 38 Cal.
265, where it is held: "The power to decree alimony falls
within the general powers of a court of equity, and exists
independent of statutory authority. And in the exercise
of this original and inherent power, a court of equity
will, in a proper case, decree alimony to the wife, in an
action which has no reference to a divorce or separation."
*Woods v. Waddle,* 44 Ohio St. 449, where it is held: "A
and P. were married in West Virginia at their domicile,
where A. retained his domicile, but P. went to Tennessee,
where, in *ex parte* proceedings, she obtained a divorce *a
vinculo* from A., but, as there was no personal service
upon A., her application for alimony was dismissed with-
out prejudice and to enable her to sue for it elsewhere.
She then brought suit here for alimony alone, and to reach
certain property in Ohio belonging to A., in which case
she obtained service upon A., who also appeared and filed
pleadings in the case, and on trial the court found suffi-
cient cause and allowed her alimony. *Held,* P. had a right
thus to bring her action for alimony alone, and she could
have her claim therefor determined, and, if sustained upon
trial, the court could allow her reasonable alimony out
of the property of A." The fact that her application for
alimony was dismissed by the Tennessee court without
prejudice and to enable her to sue for it elsewhere, is im-
material. If *Eldred v. Eldred* is sound, that fact could not
aid her in this state, because of the other fact that at the
time of applying for alimony in this state she would not
be the wife of her former husband.

Let us now see what we held in *Cochran v. Cochran,
supra.* In that case it appears that Cochran left his wife
and family in Wisconsin and came to Nebraska, as his
wife thought, on a temporary mission and with the in-
tention of returning to his family. Whether he was actu-
ated by that thought or not, it appears that after coming
to Nebraska he decided not to return to his family, but

brought a suit for divorce on the ground of desertion, obtained service by publication, complying with all the requirements of law, and obtained a divorce from his wife. About two years later she instituted suit to recover alimony. In her petition she set out the acts of Cochran in deserting his family, and alleged that she had no knowledge of his application for the divorce until after it had been granted. She did not ask to have the decree which her husband had obtained set aside, nor was it set aside. Yet we held, as appears from the syllabus:

"1. A court of equity will entertain an action brought for alimony alone, and will grant the same, although no divorce or other relief is sought, where the wife is separated from the husband without her fault.

"2. The district courts of this state, being courts of general equity jurisdiction, are not limited in the exercise of such jurisdiction by statute.

"3. A husband deserted his wife and minor children in the state of Wisconsin, where they resided, took up his abode in this state and became a citizen thereof, and procured a divorce from his wife on the grounds of desertion, obtaining service on her by publication. The wife had no knowledge of the divorce proceedings until after the date of the decree. Two years after the date of the divorce the wife brought suit in equity against the husband for alimony. *Held,* (1) That the action was not brought under, nor governed by, section 46, chapter 25, Compiled Statutes of 1893, nor by section 602 of the code of civil procedure, but was a separate and independent action based on the legal obligation of the husband to support his wife and children; (2) that the petition stated a cause of action for alimony, although it contained no allegation that the wife and children were in destitute circumstances or in actual need of support.

"4. Our divorce laws are liberal and should be liberally construed; but they are not designed for, and should not be used to enable designing husbands, without cause, to legally discard their wives, whether domiciled in this or

other states, or to escape the performance of their marriage contracts."

The venerated Judge WAKELEY, who heard the case, rendered a decree in favor of Mrs. Cochran for alimony in the sum of $2,000, in instalments of $500 each, and awarded her a further sum of $250 a year during life. From this decree all parties appealed. The opinion first considers the appeal of the plaintiff's former husband. In that consideration Cox v. Cox, 19 Ohio St. 502, Graves v. Graves, supra, Earle v. Earle, supra, and Smithson v. Smithson, 37 Neb. 535, are all approved. In his appeal Cochran urged four grounds for reversal: First. That an action for alimony or maintenance cannot be maintained in this state except as an incident to divorce proceedings, and that as Mrs. Cochran in her petition did not pray for a divorce the court had no jurisdiction of the subject matter of the suit. Second. The statute of limitation, viz., that under section 46, ch. 25, Comp. St. 1893, no proceedings for reversing, vacating or modifying any decree of divorce could be prosecuted after the expiration of six months. Third, That the court was wrong in awarding any alimony whatever to Mrs. Cochran, for the reason that the petition did not show that she or her children were in need of support. Fourth, That the amount awarded Mrs. Cochran was excessive. His appeal was dismissed. The court then took up the appeal of Mrs. Cochran, and said (p. 629) : "Her sole ground of complaint is that the amount of alimony awarded her by the district court is too small." It then proceeded to a consideration in detail of the property owned by Cochran, as shown by the evidence, and, after making certain deductions from his real estate, by reason of the fact that some of it was in litigation, found the clear net value of the remainder of his property to be $23,633. The court then added that it did not think alimony should be awarded in instalments during the life of a party, but held that Mrs. Cochran's appeal should be sustained, but that that portion of the decree of the district court allowing $250 a year during Mrs. Cochran's life should be set aside, and computed the amount which

should be allowed, in the gross sum of $6,000, payable in three equal annual instalments, and entered judgment modifying the decree of the district court as follows (p. 631) : "The decree of the district court as to the amount of alimony awarded Mrs. Cochran is set aside, and a decree will be entered in this court in favor of Mrs. Cochran against Warren Cochran for the sum of $6,000 alimony, as hereinbefore stated. In all other respects the decree of the district court is affirmed." It will be seen from the above that this court in the *Cochran* case sustained a suit by the woman, commenced two years after her husband had obtained from her a divorce in strict compliance with the laws of this state, and in which suit she did not ask that the divorce theretofore granted to her husband should be set aside, and which divorce this court did not set aside; and under the general equity jurisdiction, existing in the courts of this state, which it said are not limited in the exercise of such jurisdiction by statute, it awarded Mrs. Cochran the sum of $6,000 *as alimony*. We think our holding in *Cochran v. Cochran* is sound and should be followed; and, in so far as it conflicts therewith, *Eldred v. Eldred* is overruled.

The answer to defendant's second point, viz., that, having accepted and retained the fruits of the Arkansas decree, plaintiff is estopped to repudiate that decree now, is that she is not attempting to repudiate that decree. As in the case of *Cochran v. Cochran,* she is not assailing the legality of the divorce, nor is she questioning the adequacy of the allowance made to her out of the property within the jurisdiction of that court. We therefore hold that the decision of the Arkansas court is not *res judicata* here, and that the acceptance and retention by Mrs. Bates of the allowance made her in that case does not estop her from maintaining the present suit.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.

LETTON, J., concurs in the conclusion.