[Civ. No. 8046. Third Dist. Nov. 29, 1951.]

KATHERINE C. CAMPBELL, Respondent, v. CHARLES J. CAMPBELL, Appellant.

Chalmers, Cowing & Sans for Appellant.

A. G. Bailey and John A. Young for Respondent.

VAN DYKE, J.—On April 8, 1947, respondent herein as plaintiff commenced an action in the Superior Court of Yolo County wherein she sought separate maintenance from appellant. Appellant answered and filed a cross-complaint for divorce. On November 3, 1948, respondent herein filed an amended complaint wherein she also sought divorce. On March 28, 1949, the local court entered its interlocutory decree wherein it adjudged respondent was entitled to a divorce from appellant on the ground of extreme cruelty. Appellant was ordered to pay to respondent the sum of $400 per month as alimony for her support and maintenance, beginning April 1, 1949, and continuing until the death or remarriage of respondent. On May 27th appellant took an appeal from that portion of the interlocutory decree awarding alimony.

The appeal was abandoned on June 23, 1949, and the decree then became final. In the meantime and on April 18th appellant went to Carson City, Nevada, and on June 16th filed in the First Judicial District of that state, in and for the county of Ormsby, his complaint for divorce upon the ground that the spouses had lived separate and apart without cohabitation for more than three years, this latter ground of divorce not being recognized in California, but available in Nevada. Substituted service of summons and complaint was made upon the defendant in that action. She did not appear. On July 21, 1949, appellant was granted a divorce by the Nevada court. That decree contained no provisions concerning alimony nor did it refer to the California decree which had been previously rendered. On August 21, 1950, respondent herein moved the local court for a supplementary judgment that she recover of appellant the sum of $2,000 accumulated unpaid alimony installments accruing in the months of April to August, inclusive. Appellant resisted the motion, relying upon the Nevada decree. The motion was granted. The local court concluded that the Nevada decree, based upon the ground of noncohabitation, was valid, and dissolved the marriage between the parties as of the date of its entry. From the order and judgment that respondent, notwithstanding the dissolution of the marriage by force of the Nevada decree, recover the amounts ordered paid as alimony by the interlocutory decree of the local court, this appeal has been taken.

The force and effect of an interlocutory decree of divorce rendered under California's dual divorce decree procedure was settled by our Supreme Court in the case of *Wilson* v. *Superior Court,* 31 Cal.2d 458 [189 P.2d 266]. The court there declared that the function of an interlocutory decree includes the establishment of the right of a party to a divorce, the hearing and final determination of the rights of the parties as to property and a consideration and determination of the matter of the further support of the wife by the husband; that if no appeal be taken, and of course if appeal be taken then upon affirmance, the interlocutory decree becomes final with respect to these matters. Quoting from *Parnham* v. *Parnham,* 32 Cal.App.2d 93, 96 [89 P.2d 189], the court said that the interlocutory decree in a divorce action becomes final and is res judicata on all questions determined therein, including the property rights of the parties, except the final dissolution of the marriage which is generally the only question held in abeyance until the entry of the final decree. It

was held that, while an award of temporary alimony is terminated by the interlocutory decree unless a provision for permanent alimony is made therein or the question is reserved for later consideration, this is not so of a final interlocutory decree awarding permanent alimony, which decree in and of itself is res judicata upon the right of the spouse to whom the award is made to receive the same in accordance with the decree. Said the court further: "It is true that in the case of an award of permanent alimony [that is an award made by the interlocutory decree], the court, by virtue of section 139 of the Civil Code, retains continuing power to modify its order" but "until so judicially modified or vacated 'in accordance with the methods applicable to judgments generally' . . ., an award of permanent alimony contained in an interlocutory decree would appear entitled to the same respect or finality as any other substantive right litigated and determined by such decree." Distinguishing *Cardinale* v. *Cardinale*, 8 Cal.2d 762 [68 P.2d 351], the court said as to the Wilson case: "Here the alimony obligation was imposed on petitioner while the marital status was in existence and upon rendition of the interlocutory decree. The question of alimony was then at issue and adjudicated." And the court finally declared that the lack of any provision in the final decree of divorce carrying forward the permanent alimony award did not preclude the enforcement of that award thereafter.

When the judgment appealed from herein was rendered the interlocutory decree had long been final. It had never been modified. While for the purpose of this decision it may be assumed that the Nevada decree of absolute divorce was effectual as terminating the marriage it did not and could not affect the rights of the respondent herein as decreed to her by the interlocutory decree. Indeed, it did not even purport to do so by anything said therein. Surely if a final decree of the court in the California action terminating the marriage but silent as to alimony provisions would not have the effect of terminating those provisions as contained in the interlocutory decree, then the Nevada judgment could have here no greater effect, unless the full faith and credit clause of the federal Constitution compels a different result.

The decision in *Wilson* v. *Superior Court, supra,* was given under date of February 6, 1948. On June 7th following the United States Supreme Court decided the case of *Estin* v. *Estin,* 334 U.S. 541 [68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d

1412]. The case was one in which a New York separate maintenance decree was invoked by the wife who had secured it through motion for judgment against her former husband in conformity therewith, which motion was opposed by him upon the ground that after rendition of the New York maintenance decree he had obtained a divorce in Nevada upon constructive service and after establishing domicile therein. The wife had not appeared in the Nevada proceeding. With reference to the New York judgment the Supreme Court said that it was "a property interest of respondent, created by New York in a proceeding in which both parties were present. It imposed obligations on petitioner and granted rights to respondent. The property interest which it created was an intangible, jurisdiction over which cannot be exerted through control over a physical thing. Jurisdiction over an intangible can indeed only arise from control of power over the persons whose relationships are the source of the rights and obligations. . . . Jurisdiction over a debtor is sufficient to give the State of his domicile some control over the debt which he owes. . . . But we are aware of no power which the State of domicile of the debtor has to determine the personal rights of the creditor in the intangible unless the creditor has been personally served or appears in the proceeding. The existence of any such power has been repeatedly denied. . . . We know of no source of power which would take the present case out of that category. The Nevada decree that is said to wipe out respondent's claim of alimony under the New York judgment is nothing less than an attempt by Nevada to restrain respondent from asserting her claim under that judgment. That is an attempt to exercise an in personam jurisdiction over a person not before the court. That may not be done. Since Nevada had no power to adjudicate respondent's rights in the New York judgment, New York need not give full faith and credit to that phase of Nevada's judgment. A judgment of a court having no jurisdiction to render it is not entitled to the full faith and credit which the Constitution and statute of the United States demand. . . . The result of this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony." The court made the foregoing declarations after having noted that the highest court in New York had held that a support order could survive divorce and that such conclusion was binding upon it except as it might conflict with the full faith and credit clause, which

it did not. Likewise the highest court of this state has declared that an interlocutory decree finally adjudicating, subject only to modification by the court rendering it, the right of a wife to receive alimony will survive a final decree dissolving the marriage. It is thus clear that there was no power in the Nevada court in granting an absolute divorce ex parte to affect in any way the adjudicated rights of respondent here as embraced within the interlocutory decree of the local court.

The judgment appealed from is affirmed.

Adams, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 24, 1952.