Argued February 23, affirmed June 6, 1956

# LEUTY *v.* LEUTY

298 P. 2d 207

*C. S. Emmons*, Albany, argued the cause for appellant. On the brief were Paul F. Burris, Salem, and Willis, Kyle & Emmons, Albany.

*Courtney R. Johns*, Albany, argued the cause for respondent. With him on the brief was Fred M. Bollinger, Stockton, California.

PERRY, J.

The plaintiff, Cecelia Mary Eyre, filed a suit for divorce, as Cecelia Mary Leuty, against the defendant Harry Leuty on December 29, 1945, in the Superior court of California for San Joaquin county. Harry Leuty was served personally in California, and then appeared by his attorneys, who filed a demurrer and also appeared in court to request a continuance of a

scheduled hearing on the show cause order. On January 14, 1946, a preliminary order of support was made and entered, and then on June 7, 1946, an interlocutory judgment and decree was rendered. On April 16, 1948, the California court entered its final decree.

In the meantime and on April 1, 1946, the defendant moved to Nevada, and on May 22, 1946, filed a divorce suit in the First Judicial District court of the state of Nevada, for Storey county. Substituted service of summons and complaint was made upon Cecelia Mary Leuty, the defendant in that action. She filed an answer and appeared in such proceedings without the benefit of counsel. On July 5, 1946, a decree of divorce was awarded to Harry Earl Leuty by the Nevada court. The defendant subsequently married Mrs. D. M. Carr and moved to Oregon. The plaintiff remarried June 11, 1949, thereby terminating, as of that date, her right to any further alimony payments.

The present case was brought as a suit in equity to enforce the terms of the California decree with reference to payment of support money under the preliminary order, division of property, and payment of alimony under the interlocutory decree, and to restrain the transfer of property. During the course of the trial, plaintiff dismissed the proceedings as to the defendant Mrs. D. M. Carr, also known as Mrs. Harry Earl Leuty. The trial court entered an order awarding plaintiff a monetary judgment for the total amount accrued under the California proceedings. From this order defendant has appealed.

Defendant contends that the Nevada decree is entitled to full faith and credit, and that the trial court erred in awarding plaintiff a judgment since the California interlocutory decree had no force and effect after the entry of the Nevada decree.

■ In *Cogswell v. Cogswell et al.,* 178 Or 417, 167 P2d 324, we held that the matured and unpaid installments of alimony awarded by a California court in an interlocutory divorce decree were not subject to rescission or modification, and that such a decree was protected by the full faith and credit clause of the federal constitution. The Nevada court could not relieve Harry Leuty of the obligation to pay those installments of alimony which had matured before the time of the Nevada decree. They were protected as final judgments under the full faith and credit clause. Whether or not Nevada was required to recognize the judgment for unmatured alimony payments we do not decide, but if the Nevada decree relieves the defendant of the obligation to pay the latter alimony payments, it must appear that it assumed personal jurisdiction over Cecelia Leuty, and adjudicated that issue.

In *Campbell v. Campbell,* 107 Cal App2d 732, 238 P2d 81, the California court, relying on *Estin v. Estin,* 334 US 541, 68 S Ct 1213, 92 L ed 1561, 1 ALR2d 1412, held that a Nevada decree awarding a divorce to a husband did not affect the wife's property settlement and alimony rights under a prior California interlocutory decree where the Nevada court did not acquire personal jurisdiction over the wife. In the present case, Cecelia Leuty filed an answer and appeared at the time of the trial in the Nevada proceedings. But it is apparent from the decree that the Nevada court considered her activities as constituting only a special appearance. We quote from the transcript of proceedings in the Nevada case, beginning at p 14:

"COURT: I don't care a thing in the world about that. You went into California and asked for a divorce and you got it.

"MRS. LEUTY: That was my home state.

"COURT: All right. Don't worry about that at all. I am not interested in your troubles at all; I mean in your marital troubles because you are not questioning that here. *The only thing that you are questioning here, you had your attorney file an Answer for you in your own proper person questioning the jurisdiction of the Court by reason of the fact that you have an interlocutory decree in California.*

"MRS. LEUTY: Yes." (Italics added.)

The Nevada decree states, in part:

"This cause came on regularly this day for trial after having been set for a day certain and defendant having been properly noticed as to trial date; the trial being before the Court sitting without a jury; that plaintiff appearing in person and by his attorney, W. C. McCluskey, Esq., *and the defendant appearing not;* and the files in the case showing that a summons was properly issued and duly served upon defendant and *defendant having made a special answer within the time allowed by law* and the same having been considered, *a default was entered against her."* (Italics added.)

In *Multnomah L. Co. v. Weston B. Co.*, 54 Or 22, 27, 99 P 1046, 102 P 1, we held:

"* * * as the conferring of the jurisdiction of the person is the unconstrained act of a party, the court could not prevent the consequences of a general appearance, unless it was superinduced by fraud or made by a party incompetent to act, or under such circumstances as show that it ought not to be binding."

Regardless of the facts or the reasons for the Nevada court's decision as to the nature of Cecelia Leuty's appearance, we are faced with the decree of that court holding that it was a special appearance. The general

rule is stated in Goodrich on Conflict of Laws (3rd ed) p. 187:

"A judgment rendered against a litigant who has either entered an appearance or formally engaged in the prosecution or defense of a cause of action cannot be collaterally attacked on the question of personal jurisdiction. If the court rendering the judgment lacks jurisdiction over the person, in which case there would be a violation of the due process clause, the injured party may appeal the judgment, going ultimately to the Supreme Court of the United States. This is his sole remedy, for the matter having once been litigated, becomes res judicata. *And this holds true even if there was merely a special appearance made to challenge the jurisdiction of the court.* The result seems wholly fair for the party litigant has had his day in court and he should not be heard further. The general policy favoring the termination of litigation would seem to outweigh the possible individual instances of hardship." (Italics added.)

██ Since we are bound by the Nevada court ruling that it lacked personal jurisdiction over Cecelia Leuty, the Nevada decree could not affect her property and alimony rights under the California interlocutory decree. *Campbell v. Campbell,* supra.

█ Even if we found that the Nevada court obtained personal jurisdiction over Cecelia Leuty, before we could find that a judgment enforcing the California decree as to all the payments would be in violation of the full faith and credit clause, we would have to find that the issue of alimony and settlement of property rights actually had been litigated in Nevada. The decree is silent upon this matter.

In *Armstrong v. Armstrong,* 350 US 568, 569, 76 S ct 629, decided by the United States Supreme Court April 9, 1956, the Supreme Court held that Ohio did

not violate the full faith and credit clause when it entered a judgment for alimony for a wife after her husband had procured a divorce in Florida. The court stated:

"The sole question presented by the petition for certiorari was whether the Ohio courts were required to give full faith and credit to the *ex parte* Florida decree, which petitioner alleges not only granted him a divorce, but also decreed that the wife was not entitled to alimony. As we interpret the Florida decree, however, the Florida court did not purport to adjudicate the absent wife's right to alimony. The Ohio courts, therefore, in awarding alimony to the wife, did not in fact fail to give full faith and credit to the Florida decree."

It is true that the Florida court lacked personal jurisdiction over the wife in the Armstrong case; but the basis of the majority decision was, not that the Florida court lacked jurisdiction to adjudicate the wife's right to alimony, but that it chose not to adjudicate that issue.

In *Manney v. Manney*, 42 Ohio L Abs 153, 59 NE2d 757, the wife obtained a judgment in Ohio for alimony and support. Thereafter, the husband obtained a divorce in Nevada in which the wife filed an answer setting up the Ohio alimony and support order and prayed that the husband's complaint be dismissed, that judgment be rendered for defendant, and for such further relief as the court might deem equitable. On a motion filed by the husband to be relieved from payment of alimony and support, the Ohio court found that the wife's answer in the Nevada proceedings was merely a defense against her husband's petition for divorce in Nevada and did not bar her subsequent right to enforce alimony and support in Ohio. The court relied on the case of *Metzger v. Metzger*, 32 Ohio App

202, 167 NE 690, which held that divorce and alimony are separable causes of action so that in an action for either, rights as to the one not litigated are not thereby settled. Both Ohio cases ruled that the wife was not required to raise the issue of alimony while defending the husband's divorce suit. The rule that, when a party has been sued, he must set up all the defenses he has to that cause of action, and that, upon his failure so to do, he is barred in a subsequent suit from further setting up those defensive facts of which he might have availed himself in the earlier litigation, runs only to facts which are strictly defensive. We quote from the Metzger case, 32 Ohio App 202, 204, 167 NE 690:

"* * * no attempt was made by either party in the Nevada case to determine the property rights of the parties. If the abandoned wife in Ohio could not be permitted to appear in the Nevada court and repel unjust accusations made against her without thereby foregoing her right to prosecute her alimony suit in the Ohio court that had already acquired jurisdiction thereof, a club of intimidation would be placed in the hands of the fugitive husband that would enable him to accomplish a fraud upon the courts of the state to which he had fled. No rule so unfortunate as this has yet been established."

In the case at bar, neither the complaint nor the answer in the Nevada proceedings raised the issue of alimony or property settlement. The only mention of this issue was an allegation in the complaint that there was no community property located in Nevada. There was some testimony by Harry Leuty at the time of the trial in Nevada concerning property, but it was not entered as a basis for deciding either the property settlement or the alimony questions.

Whether we rest our decision on the foundation that the Nevada court ruled that it lacked personal jurisdiction over Cecelia Leuty, or that the Nevada court did not litigate the issues of alimony and property settlement, the result is the same.

The defendant has relied heavily upon *Rodda v. Rodda,* 185 Or 140, 200 P2d 616, 200 P2d 638, advancing the thought that this decision has determined the matters here involved. First, that the Nevada divorce decree is entitled to full faith and credit in this state, and, second, that the decree of divorce in Nevada terminates all rights of a wife to alimony in this state.

The decision in *Rodda v. Rodda,* supra, is authority that the decree of a sister state is entitled to full faith and credit; but the rights of a wife to enforce an Oregon decree in the Oregon courts for temporary alimony, after a decree of divorce had been entered extraterritorial, was not here involved. As to this point, *Rodda v. Rodda,* supra, is clearly distinguishable from the matter in hand, because the validity of the California decree is interpreted according to the laws of California. *Niemela v. Niemela,* 206 Or 345, 293 P2d 219; *Estin v. Estin,* supra. All that was decided in the Rodda case was that the obligation of a husband under an Oregon separate maintenance decree did not survive a subsequent valid decree of divorce granted the husband in Nevada. It was a question of construction of the Oregon statute, which applied only to "married persons," and we felt compelled to hold, though reluctantly, that "what the legislature was concerned with * * * was the rights and duties of husband and wife as long as they continued to be such, and no longer" (185 Or at p 150), and, therefore, since we were required to recognize the validity of the for-

eign divorce, we were without authority to say that the separate maintenance decree should continue in effect thereafter.

The decree of the trial court is affirmed.

Mr. Justice BRAND concurs in the result.