[S. F. No. 19886. In Bank. Oct. 5, 1959.]

OLIVE HUDSON, Respondent, v. JAMES HUDSON, Appellant.

George Porter Tobin for Appellant.

Haskell M. Goodman for Respondent.

TRAYNOR, J.—Defendant appeals from an order granting plaintiff temporary alimony, attorney's fees, court costs, and other relief in her action for divorce and permanent alimony.

The parties were married in Reno, Nevada, on May 3, 1947. They moved to California in 1950, and plaintiff is still domiciled in this state. Defendant left their home on April 6, 1957, announcing his intention to go to Reno, obtain a divorce, and return in about six weeks. Plaintiff filed her action on April 22, 1957, and defendant was personally served in Idaho on May 16, 1957. Defendant filed his action for divorce in Idaho on May 21, 1957, and plaintiff was personally served in California. Plaintiff did not appear in the Idaho proceeding. On June 14, 1957, she obtained an order to show cause why she should not be granted relief pendente lite in the California action. On the same day, defendant appeared by his attorney in the California action and demurred to plaintiff's complaint. The Idaho court granted defendant a final decree of divorce on June 19, 1957. Defendant introduced this decree in the California proceeding and resisted the order to show cause on the ground that the decree had dissolved the marriage. Plaintiff introduced evidence tending to attack the validity of the Idaho decree. The court held that plaintiff had made a prima facie showing that a marriage existed and granted the requested relief.

Defendant contends that the Idaho divorce decree must be given full faith and credit (U.S. Const., art. IV, § 1); that the trial court had no jurisdiction to grant alimony unless the parties were married; that even though on a proper showing a wife may obtain temporary alimony, costs, and fees to enable her to attack an ex parte decree, plaintiff cannot, on the ground that her attack upon the decree is weak and inconclusive; and that even if the Idaho decree did not automatically terminate plaintiff's right to support, the order must still be reversed on the ground that the court abused its discretion in determining the amount of the award.

■ Neither alimony, temporary or permanent, nor costs and fees can be awarded if no valid marriage between the parties ever existed. (*Dietrich* v. *Dietrich,* 41 Cal.2d 497, 502-504 [261 P.2d 269]; *Hite* v. *Hite,* 124 Cal. 389, 391-395 [57 P. 227, 71 Am.St.Rep. 82, 45 L.R.A. 793]; *In re Cook,* 42 Cal.App.2d 1, 3 [108 P.2d 46].) ■ When a valid marriage is admitted, however, and the issue before the court is the validity of an ex parte divorce, the trial court may

grant the wife temporary alimony, costs, and fees to enable her to attack the ex parte divorce if she demonstrates her need for the award and her husband's ability to pay it. (*Kopasz* v. *Kopasz*, 34 Cal.2d 423, 424-425 [210 P.2d 846]; *Baldwin* v. *Baldwin*, 28 Cal.2d 406, 417 [170 P.2d 670]; *Gromeeko* v. *Gromeeko*, 110 Cal.App.2d 117, 127 [242 P.2d 41].) Recent District Court of Appeal decisions would add another condition: the wife must prove that her attack on the ex parte divorce is made in good faith and with a reasonable probability of success. (*Knox* v. *Knox*, 88 Cal.App.2d 666, 676-677 [199 P.2d 766]; *Kalmus* v. *Kalmus*, 103 Cal. App.2d 405, 420-423 [230 P.2d 57]; *cf. Ottinger* v. *Ottinger*, 141 Cal.App.2d 220, 225 [296 P.2d 347].) The addition of this condition is based on the theory that the entry of a valid ex parte divorce automatically terminates the marriage and *a fortiori* marital obligations and rights, including support rights. (*Knox* v. *Knox*, *supra*, at 676.) To avoid this effect of the ex parte divorce, the wife must demonstrate that the divorce court was without jurisdiction; only if she can show that she is likely to succeed can her husband be required to furnish the necessary funds. We need not determine whether plaintiff has met this condition, for the theory upon which it is based is inconsistent with the recent decision of the United States Supreme Court in *Vanderbilt* v. *Vanderbilt*, 354 U.S. 416 [77 S.Ct. 1360, 1 L.Ed.2d 1456].

Following the Williams cases (*Williams* v. *North Carolina I*, 317 U.S. 287 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273] and *Williams* v. *North Carolina II*, 325 U.S. 226 [65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366]), the question arose whether a valid ex parte divorce entered at the domicile of only one party to the marriage automatically terminated the wife's right to support. This question was settled by the theory of divisible divorce, foreshadowed in *Esenwein* v. *Commonwealth*, 325 U.S. 279, 281-283 [65 S.Ct. 1118, 89 L.Ed. 1608, 157 A.L.R. 1396] (concurring opinion) and set forth in *Estin* v. *Estin*, 334 U.S. 541 [68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412], where the court held that an ex parte Nevada divorce procured by the husband did not terminate the wife's prior adjudicated right to separate maintenance: "The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the

matters of her dominant concern." (*Id.*, at 549.) Finally, in *Vanderbilt* v. *Vanderbilt, supra,* the court perfected the divisible divorce theory by its holding that even when' the wife's right to support had not been reduced to judgment before the ex parte divorce, that divorce could not affect her support rights. The court rested its holding on the due process clause: since the foreign state had no personal jurisdiction over the absent spouse, its decree ". . . to the extent it purported to affect the wife's right to support, was void and the Full Faith and Credit Clause did not obligate New York to give it recognition." (*Id.*, at 419.) ■ Since the due process clause forbids the divorce court to adjudicate the absent wife's right to support, it follows that she cannot be deprived by that court of whatever rights of support she had under the law of her domicile at the time of the divorce. (*Lewis* v. *Lewis,* 49 Cal.2d 389, 394 [317 P.2d 987].)

The crucial question in this case, therefore, is whether the law of California permits plaintiff to obtain support following the entry of an ex parte divorce. Of the 33 jurisdictions that have passed on this question, 23 states and the District of Columbia have held that a wife may obtain support or alimony following the entry of an ex parte divorce. (*White* v. *White,* 83 Ariz. 305, 307-309 [320 P.2d 702]; *Wagster* v. *Wagster,* 193 Ark. 902, 906 [103 S.W.2d 638]; *Davis* v. *Davis,* 70 Colo. 37, 41 [197 P. 241]; *Hopson* v. *Hopson,* 221 F.2d 839, 847 [App.D.C.]; *Pawley* v. *Pawley,* (Fla.) 46 So.2d 464, 471-473 [28 A.L.R.2d 1358], cert. den. 340 U.S. 866 [71 S.Ct. 90, 95 L.Ed. 632]; *Durden* v. *Durden,* 191 Ga. 404, 408 [12 S.E.2d 305] [only if wife's suit for divorce and alimony was filed before the entry of husband's ex parte divorce]; *Pope* v. *Pope,* 2 Ill.2d 152, 156-157 [117 N.E.2d 65]; *Bennett* v. *Tomlinson,* 206 Iowa 1075, 1079 [221 N.W. 837]; *Willoughby* v. *Willoughby,* 178 Kan. 62, 65-67 [283 P.2d 428] [by statute]; *Davis* v. *Davis,* (Ky.) 303 S.W.2d 256, 257; *Parker* v. *Parker,* 211 Mass. 139, 144 [97 N.E. 988]; *Malcom* v. *Malcom,* 345 Mich. 720, 725-727 [76 N.W. 2d 831]; *Sheridan* v. *Sheridan,* 213 Minn. 24, 27-28 [4 N.W.2d 785]; *Bodie* v. *Bates,* 95 Neb. 757, 764-770 [146 N.W. 1002, L.R.A.N.S. 1915E 421], second appeal, 99 Neb. 253 [156 N.W. 8], reversed on other grounds, 245 U.S. 520 [38 S.Ct. 182, 62 L.Ed. 444]; *Woodhouse* v. *Woodhouse,* 17 N.J. 409, 411-412 [111 A.2d 631] [by statute]; *Vanderbilt* v. *Vanderbilt,* 1 N.Y.2d 342, 349-351 [135 N.E.2d 553] [by

statute], affirmed, 354 U.S. 416 [77 S.Ct. 1360, 1 L.Ed.2d 1456] ; *Armstrong* v. *Armstrong,* 162 Ohio St. 406, 410-411 [123 N.E.2d 267], affirmed, 350 U.S. 568 [76 S.Ct. 629, 100 L.Ed. 705] ; *Spradling* v. *Spradling,* 74 Okla. 276, 277-279 [181 P. 148] ; *Wilford* v. *Wilford,* 38 R.I. 55, 56-58 [94 A. 685] [contested divorce] ; *Nelson* v. *Nelson,* 71 S.D. 342, 345-346 [24 N.W.2d 327] ; *Toncray* v. *Toncray,* 123 Tenn. 476, 491-492 [131 S.W. 977, Ann.Cas. 1912C 284, 34 L.R.A.N.S. 1106] ; *Hutton* v. *Dodge,* 58 Utah 228, 237 [198 P. 165] ; *Hicks* v. *Hicks,* 69 Wash. 627, 630-631 [125 P. 945] ; *Ische* v. *Ische,* 252 Wis. 250, 260-263 [31 N.W.2d 607, 32 N.W.2d 70].) Several of these cases rest upon familiar theories of jurisdiction : either that the divorce court had not decided the issue of alimony (e.g., *Ische* v. *Ische, supra,* at 260-263; *Hicks* v. *Hicks, supra,* at 630; *Malcom* v. *Malcom, supra,* at 726), or that the divorce court, having no jurisdiction over the wife, could not cut off her right to alimony (e.g., *Armstrong* v. *Armstrong, supra,* at 410). The more recent cases accept the divisible divorce theory, emphasizing the dominant concern of the wife's domiciliary state in protecting her right to support from a husband who seeks to avoid his duties by obtaining an ex parte divorce in a foreign state (e.g., *White* v. *White, supra,* at 307-310; *Hopson* v. *Hopson, supra,* at 844; *Pawley* v. *Pawley, supra,* at 472; *Willoughby* v. *Willoughby, supra,* at 66-67; *Davis* v. *Davis,* Ky., *supra,* at 257; *Vanderbilt* v. *Vanderbilt, supra,* at 350-351; see also Morris, *Divisible Divorce,* 64 Harv.L.Rev. 1287).

Although this precise question has not been settled in this state, certain rules have been established in related cases. We have held that an Illinios wife could enforce an Illinois support order entered subsequent to her husband's ex parte Nevada divorce (*Lewis* v. *Lewis,* 49 Cal.2d 389, 394 [317 P.2d 987].) Although we invoked the Vanderbilt holding in the Lewis case, we there applied Illinois law and were not called upon to determine the force of the Vanderbilt case upon our own law. Similarly, in *Worthley* v. *Worthley,* 44 Cal.2d 465 [283 P.2d 19], we held that a New Jersey wife could enforce a New Jersey separate maintenance decree entered before the husband's ex parte Nevada divorce. Again, New Jersey law provided the rule of decision and we followed the Supreme Court's similar holding in the Estin case. The Estin rule was applied under California law in a case holding that an ex parte Nevada decree did not terminate a wife's right to receive permanent alimony awarded in a prior California interlocu-

tory divorce decree. (*Campbell* v. *Campbell*, 107 Cal.App.2d 732, 734-736 [238 P.2d 81].) We have also held that a wife cannot recover separate maintenance, as distinguished from alimony, following the entry of a valid ex parte divorce procured by the husband. (*DeYoung* v. *DeYoung*, 27 Cal.2d 521, 523 [165 P.2d 457] ; *Kalmus* v. *Kalmus*, 103 Cal.App.2d 405, 423 [230 P.2d 57] ; *Knox* v. *Knox*, 88 Cal.App.2d 666, 676 [199 P.2d 766] ; *Patterson* v. *Patterson*, 82 Cal.App.2d 838, 842-843 [187 P.2d 113] ; *Calhoun* v. *Calhoun*, 70 Cal.App.2d 233, 236-237 [160 P.2d 923]. [In a second action between the same parties, the wife asked for permanent alimony. The court held that the prior separate maintenance action was an estoppel against the prosecution of another action for support and refused to decide whether the wife could have originally sued for alimony. *Calhoun* v. *Calhoun*, 81 Cal.App.2d 297, 304-305 [183 P.2d 922] ;] *cf. Colbert* v. *Colbert*, 28 Cal.2d 276, 279 [169 P.2d 633].) The distinction between separate maintenance, which depends upon an existing marriage (*Monroe* v. *Superior Court*, 28 Cal.2d 427, 429-430 [170 P.2d 473]), and alimony, which follows the dissolution of the marriage by divorce, is also made by several other states that permit alimony but not separate maintenance following an ex parte divorce. (*Pawley* v. *Pawley, supra,* at 474-475; compare *Willoughby* v. *Willoughby, supra,* with *Lowry* v. *Lowry*, 174 Kan. 526, 529 [256 P.2d 869] ; compare *Parker* v. *Parker, supra,* with *Chittick* v. *Chittick*, 332 Mass. 554, 555 [126 N.E.2d 495].) In this respect, however, a distinction must be drawn between the enforcement of a preexisting decree of separate maintenance and the securing of a decree of separate maintenance after a foreign ex parte divorce. Although the court cannot grant separate maintenance to a party who is not married, it does not follow that an existing support right formalized in such a decree automatically terminates on the dissolution of the marriage. ■ "In a divorce action in a foreign state upon constructive service the court there has authority to adjudicate status (in rem) of a person residing in that state but has not jurisdiction to adjudicate away (in personam) any of the then vested property rights of the absent spouse who does not reside in such state, who is not personally served with process in that state and who does not appear in the action. The personal rights of the spouses in property not within the jurisdiction of the acting court remain subject to litigation in the proper forum. It seems to me that the right of a wife, or in a proper case the husband,

to support from the other spouse as of the date of the divorce is a property right which can be adjudicated only by a court having jurisdiction in personam.'' (Schauer, J., concurring in *DeYoung* v. *DeYoung*, 27 Cal.2d 521, 527 [165 P.2d 457].)

 If, as we have concluded, a foreign ex parte divorce does not terminate the right to support arising out of the marriage, *a fortiori* it does not terminate the right to support formally established and defined by a valid separate maintenance decree, and that right therefore continues until modified or terminated in appropriate proceedings. *Cardinale* v. *Cardinale*, 8 Cal.2d 762 [68 P.2d 351], is to the contrary, but that case was decided before the theory of divisible divorce was established in *Estin* v. *Estin, supra,* 334 U.S. 541, and is overruled.

Defendant contends, however, that section 137.2 of the Civil Code requires an existing marriage as a jurisdictional prerequisite for the granting of alimony pendente lite.

 Section 137.2, together with the other sections of the Civil Code concerning alimony and support (§§ 136, 139) specifically authorize courts to award alimony and support during actions for divorce or separate maintenance. These sections, however, govern the case of a domestic divorce in which the court has jurisdiction of both parties. They are not concerned with a case, such as this one, involving foreign elements. In the normal divorce case, the parties are of course married: if they are not married, there can be no divorce. If defendant's Idaho decree is valid, we must give it the full faith and credit required by the Constitution of the United States: that is, we must recognize that the parties are no longer married and that no divorce can be granted to plaintiff. Once this fact is established the sections of the Civil Code invoked by defendant become irrelevant, for they deal solely with the award of alimony or support in divorce cases. A wife's right to support arises from the marriage and is recognized by statute. (Civ. Code, §§ 155, 174.) It is not created by a divorce decree; the decree is simply one means of enforcing the right. We do not imply that plaintiff has mistaken her remedy. At the time her action was filed there was an existing marriage; but if the Idaho decree dissolved the marriage, her prayer for divorce is moot and only her prayer for permanent alimony remains to be adjudicated. The Idaho decree, even if valid, did not and could not under the Vanderbilt decision, terminate plaintiff's right to alimony under the law of this state.

Defendant contends that our courts can grant alimony only in an action for divorce, on the ground that it is only in such an action that the statutes provide for alimony. This contention was answered adversely to defendant as early as 1869. In *Galland* v. *Galland,* 38 Cal. 265, a wife sued her husband for alimony without asking for a divorce. The statutes contained no provision for alimony save in an action for divorce. The husband contended that the statutes were exclusive and that the court lacked power to grant alimony in any other case. The court held that it had general equity powers to grant alimony in cases aside from those specifically provided for by statute and answered the husband's contention in these words: ''The Legislature was not dealing with the general subject of alimony, as an independent subject-matter of legislation; but only, as one of the incidents of an application for divorce. It saw fit to define the power of the Court over the allowance of alimony on an application for divorce; but was not considering the subject of alimony in any other class of cases. If it had provided that a writ of *ne exeat* or *distringas* might issue against a defendant in an action for divorce, it would scarcely be claimed by any one that this was equivalent to a declaration that such writs should not issue in any other class of actions. For the same reason, a provision for alimony in a suit for divorce is not to be considered as a declaration that alimony shall not be allowed in other actions.'' (*Id.,* at 267-268. See also *Paxton* v. *Paxton,* 150 Cal. 667, 670-672 [89 P. 1083] ; *Livingston* v. *Superior Court,* 117 Cal. 633, 634-636 [49 P. 836, 38 L.R.A. 175] ; and *Dunphy* v. *Dunphy,* 161 Cal. 87, 92 [118 P. 445], allowing temporary alimony pending suit for annulment despite the absence of express statutory authorization; *cf. Bernard* v. *Bernard,* 79 Cal.App.2d 353, 356-357 [179 P.2d 625].)

In *Dimon* v. *Dimon,* 40 Cal.2d 516 [254 P.2d 528], however, a majority of this court held that a wife's right to recover alimony or support for herself is limited to the period when the parties are husband and wife. The Dimon case was decided before the Vanderbilt case and must be reexamined in the light of that case.

The broad proposition of the Dimon case that alimony cannot be granted if the marriage has been dissolved cannot be denied, if the marriage was dissolved in this state and the court had jurisdiction over both spouses. (See *Long* v. *Long,* 17 Cal.2d 409, 410 [110 P.2d 383] ; *Tolle* v. *Superior Court,* 10 Cal.2d 95, 97-98 [73 P.2d 607].) But the Dimon case ex-

tended this proposition to cover a case where the marriage had been dissolved by an ex parte Connecticut decree procured by the wife. The wife's right to support from her husband had not been adjudicated prior to the divorce decree as in the Estin case. After *Estin*, but before *Vanderbilt*, the argument could have been made that by terminating the marriage the ex parte divorce automatically terminated all rights, including the nonadjudicated right to support that grew out of that marriage. But after the Vanderbilt case, such a proposition cannot be maintained, for it is now clear that the ex parte proceeding does not affect the wife's support rights. By treating the Connecticut decree as terminating any possibility that the plaintiff in *Dimon* could secure a support award in this state, we gave that decree more weight in this state than it is now constitutionally entitled to receive. To follow *Dimon* after *Vanderbilt* in a case involving a foreign ex parte divorce is to permit the court of another state to preclude the courts of this state from deciding a question of California law that the foreign court had no jurisdiction to determine. Under *Vanderbilt* the conclusion is inescapable that the issue of alimony which could not be decided by the divorce court, remains open for determination in a proper forum. The Dimon case is therefore overruled.

The doctrine of divisible divorce set forth in *Estin* and *Vanderbilt* provides a sensible solution to the problems engendered by ex parte divorces. Its repudiation in this case would compel collateral attacks upon such divorces to protect rights to support, with resulting confusion as to marital status, property rights, rights of innocent third persons who may have relied upon the decree, and the legitimacy of children. (See Powell, *And Repent At Leisure*, 58 Harv.L. Rev. 930.) California has a dominant interest in the well-being of her domiciliaries, and the courts of this state are open to adjudicate their support rights following an ex parte divorce.

 Since plaintiff may maintain her action for permanent alimony without attacking defendant's Idaho decree, it follows that she may receive temporary alimony, costs, and fees to enable her to continue the suit when she has shown that she needs such relief and that defendant has the ability to provide such assistance. (*Sweeley* v. *Sweeley*, 28 Cal.2d 389, 390 [170 P.2d 469].) This court will not upset a trial court's award of temporary alimony unless the circumstances show as a matter of law that the court has abused

its discretion. (*Baldwin* v. *Baldwin*, 28 Cal.2d 406, 413, 417-418 [170 P.2d 670]; *Sweeley* v. *Sweeley, supra,* at 393-394.) ▮ Defendant contends that the combined income of plaintiff and her minor son by a former marriage exceeded his own earnings by $1,600 per year. Defendant fails to consider, as the trial court evidently did, that plaintiff's son was about to enter college and was unable to contribute to his mother's support. The evidence showed that plaintiff's expenses exceeded her earnings by $63 per month; that she was making the payments on the parties' California home; that her take-home pay was $70 per week, although her husband's take-home pay had been $89 per week during the time the parties lived in California and he received a pension of $33 per month; and that she anticipated increased expenses in maintaining the present action. Defendant does not contend that he is unable to pay the modest amount of the award ($65 per month) ordered by the trial court. On this record, we cannot say as a matter of law that the trial court abused its discretion.

▮ Finally, defendant objects to that part of the order that restrained him from conveying the California property. The evidence showed that defendant had threatened to prevent plaintiff's enjoying any of the property in the event of a divorce and that he had prayed to have sole title to the California property vested in him in the Idaho proceedings. The trial court properly sought to preserve the property until such time as the parties' rights therein could be adjudicated; its order was not an abuse of discretion.

The order appealed from is affirmed.

Gibson, C. J., Schauer, J., Spence, J., Peters, J., and White, J., concurred.

McCOMB, J.—I concur in the order for the sole reason that, in my opinion, the facts are analogous to those in *Baldwin* v. *Baldwin,* 28 Cal.2d 406 [170 P.2d 670], where the controlling rule of law is stated at page 416 et seq.