[Civ. No. 14251.   Second Dist., Div. One.   Feb. 1, 1944.]

CLAIRE M. BULLER, Respondent, v. JOHN J. BULLER et al., Defendants; MARCUS L. ROBERTS, Appellant.

Marcus L. Roberts in pro. per., for Appellant.

Michael F. Shannon and Thomas A. Wood for Respondent.

YORK, P. J.—This is an action for the determination of plaintiff's interest in community property which, the complaint alleges, consists of Lot 62 of Chancellor's Tract No. 1, (also herein referred to as Chanslor Tract No. 1), situated in Riverside County, "together with a certain number of cattle, located on a ranch in Riverside County, California, an automobile, an interest in certain ranch property located in Riverside County, California, certain bales of cotton, honey, alfalfa seed . . ."

The complaint also alleges that no disposition was made of said community property in that certain divorce action brought by plaintiff against defendant John J. Buller (on the ground of habitual intemperance) on the 16th day of September, 1933; that the interests of the plaintiff and of defendant John J. Buller in and to said property have never been determined; that said defendant has received all of the value of the cattle, cotton, honey, alfalfa seed and the automobile, and the value of all other community property of said parties except: Lot 62 of "Chancellor's" Tract No. 1; that this action is brought for the purpose of having determined the interest of plaintiff and defendant John J. Buller, in the community property of the parties hereto, and for the purpose of quieting the title of the plaintiff in and to such portion of the community property that the plaintiff is entitled to receive.

The complaint further alleges that Elizabeth B. Atwill and Marcus L. Roberts claim some right, title and interest in and to some of the community property of the plaintiff and of the defendant John J. Buller, which claims are subordinate to the right, title and interest of plaintiff therein.

Plaintiff then prays that the court determine the community property interests of the plaintiff and defendant John J. Buller, and award one-half thereof to her, and that the claims of Atwill and Roberts be adjudged subordinate and subject to the right, title and interest of plaintiff herein to her proportionate share of said community property.

Defendants John J. Buller and Elizabeth B. Atwill filed herein disclaimers in and to any right, title, interest or estate in the property involved.

At the conclusion of the trial, the court found that defen-

dant John J. Buller "has received all of the value of the cattle, cotton, honey, alfalfa seed and the automobile, all of which are community property" of himself and plaintiff, and that said defendant "received and took into his possession the whole of said community property of said parties, except Lot 62 of the Chancellor's Tract No. 1 . . . that the plaintiff is entitled to receive as her share of the community property . . . Lot 62 of Chancellor's Tract No. 1 . . . free and clear of any claim of the defendants, J. J. Buller, Elizabeth B. Atwill and Marcus L. Roberts . . ."

The court also found that defendant John J. Buller "for a nominal consideration, did on or about March 2, 1937, attempt to convey to Elizabeth B. Atwill, all of his right, title and interest in and to said property. That at said time, the said Elizabeth B. Atwill had full knowledge of the fact that the plaintiff herein was claiming said property as her share of the community property. That said Elizabeth B. Atwill was not a bona fide purchaser of said property for value . . . that on or about the 6th day of December, 1940, Elizabeth B. Atwill for a nominal consideration attempted to transfer whatever right (she) had in and to said property to the defendant Marcus L. Roberts . . . (who) took said property with full knowledge of the fact that said Elizabeth B. Atwill had not paid a consideration therefor, and with full knowledge of the fact that plaintiff herein claimed said property as her share of the community property and with knowledge . . . that the community rights of the plaintiff and the defendant John J. Buller in and to their community property had not been determined by a court of competent jurisdiction and that the said Marcus L. Roberts was not a bona fide purchaser for value . . . That on or about the 10th day of December, 1940, John J. Buller for a nominal consideration, conveyed to Marcus L. Roberts all of his right, title and interest in and to said property . . . that by reason of said deeds, the said defendant Marcus L. Roberts obtained no other or different title than had theretofore vested in the defendant, John J. Buller, and took said property subject to all of the claims and equities in favor of the plaintiff herein and against the defendant John J. Buller."

From the judgment which was thereafter entered pursuant to said findings, defendant Marcus L. Roberts prosecutes this appeal.

Appellant urges (1) that the findings are not supported

by the evidence; and (2) that he is the owner of an undivided one-half interest in said Lot 62. He traces his ownership thereto as follows:

(1) That no disposition was made of the community property of the plaintiff, Claire M. Buller, and the defendant, John J. Buller, in either the interlocutory decree of October 25, 1934, or the final judgment of divorce entered on October 30, 1935;

(2) That on March 2, 1937, by quitclaim deed, defendant John J. Buller conveyed said lot to his sister, defendant Elizabeth B. Atwill.

(3) That on August 14, 1937, said lot was sold to the Palo Verde Irrigation District on account of delinquent water assessments, and said district by deed dated September 28, 1940, conveyed said lot to defendant Elizabeth B. Atwill, who by quitclaim deed dated December 6, 1940, conveyed said lot to appellant;

(4) That in the meantime, on January 27, 1940, plaintiff caused a writ of execution to issue in the aforesaid divorce action by virtue of which she levied upon all of the interest of defendant John J. Buller in said lot. In that proceeding the lot was sold and plaintiff purchased it at the execution sale;

(5) That on December 10, 1940, John J. Buller quitclaimed his interest in said lot to appellant, and said appellant, in conformity with section 720 of the Code of Civil Procedure, redeemed said lot from plaintiff on January 27, 1940, and received a certificate of redemption from the Sheriff of Riverside County;

(6) That on January 23, 1941, William H. Atwill, husband of Elizabeth B. Atwill, quitclaimed all of his interest in said lot to appellant.

This case and the case of *Buller* v. *Buller, post,* p. 694 [145 P.2d 653], this day decided, were consolidated for trial, and separate appeals have been perfected from the judgments rendered therein.

At the trial of said consolidated cases, only two witnesses were produced, i. e., the plaintiff and the County Recorder of Riverside County. The plaintiff testified as follows: "Q. Now, in 1933, when you filed your action for divorce, will you tell the court what property you had at Blythe? A. By that time we had proved up on our homestead. Then we had the Chancellor Tract, Lot 62, near Blythe. That is real property. Was that all you wanted? Q. I want to know what

personal property you had. A. He had alfalfa seed. Q. Will you tell us approximately how much? A. I would say about $1200 worth. He had approximately 50 cases of honey. Q. Do you know what the honey was worth at that time? A. I would say along about $500; he had five bales of cotton, and I think he was given about $500. I think it was about $100 a bale at that time. The rest of the property that he had I wouldn't know how much he got. Q. Did he have any cattle? A. He had cattle; I would say along about 65 head of cattle. It may have been more, or it may have been less. He had hogs, he had chickens, turkeys, ducks, guinea hens. Q. Did he have wagons? A. He had several wagons, plows, cultivators, tractors and a truck, a Ford truck; he had all kinds of implements of all kinds. Q. Did you receive any portion of this personal property? A. No. Q. Did Mr. Buller take possession of all of it? A. He had it all. Q. Has he ever accounted to you for any proceeds of this personal property? A. Never has. Q. You have received, of the personal property between yourself and your husband, up to the present time, no part of it, is that right? A. Not a bit, no. Q. Although you have had possession of the Chancellor Tract lot? A. Yes, that home I have had ... Q. (Mr. Wood) Do you recall having given a quitclaim deed to Mr. Quick and he put certain money in escrow? A. Oh, yes, yes; but I didn't receive any of that money. Q. No, not yet. But outside of that, you never conveyed away any interest in that homestead? A. No. Q. Do you know whether or not your husband ever conveyed any interest in that homestead other than at that time? A. No ... (Cross-examination) Q. Getting back to your son Freddie, it was prior to the interlocutory decree that Freddie went to live with your former husband, is that correct? A. I don't remember. Q. In other words, he was supporting him for many months prior to the time you obtained your interlocutory decree, isn't that correct? A. Against my wishes ... Q. (Mr. Roberts): Then at the time the interlocutory decree was entered, no order of the court was made requiring him to pay you any further money for the support of minors, was there. Mr. Wood: We will stipulate that was not. We will stipulate that she supported the children all the time. Mr. Roberts: I won't stipulate as to that. Q. Now, ever since the interlocutory ... from the time Freddie went to live with your former husband and up until the time of his death, he was en-

tirely supported by your husband, is that not a fact? A. No ... Freddie worked. Q. Did you contribute anything toward his support? A. No ... Q. Do you know that Freddie and your former husband lived with Mrs. Atwill for about six months—do you not? Do you know that was true? A. I wouldn't say. I don't know. Q. Don't you know where Freddie was during this period? A. I do. Q. Isn't it a fact he lived with Mrs. Atwill? A. Whether he lived there or not, I couldn't say ... when he first went out to work at this hotel, he lived—he stayed at Mrs. Atwill's ... I do know he was with Mrs. Atwill; but how many months—it wasn't very long ..."

Upon the uncontradicted evidence of plaintiff Claire M. Buller, and despite the prayer in the instant case, that said plaintiff be awarded one-half of the community property, the trial court found that the former husband, John J. Buller, "has received all of the value of the cattle, cotton, honey, alfalfa seed and the automobile, all of which were community property ... and that, said defendant received and took into his possession the whole of said community property ... except Lot 62 of the Chancellor's Tract" No. 1, and that said plaintiff "is entitled to receive as her share of the community property ... Lot 62 of the Chancellor's Tract No. 1 ..."

The complaint in the divorce action alleged that "plaintiff and defendant during the period of their married life accumulated ... Lot 62 ... That said plaintiff and defendant have certain cattle located on a ranch in Riverside County, California. That *plaintiff* (defendant) is now possessed of certain bales of cotton, honey and alfalfa seed, all of which is community property of plaintiff and defendant." While the court in the divorce action found "that all of the allegations of the plaintiff's complaint are true"; no disposition was made of any of said community property.

■ As stated in the opinion in the companion case of *Buller* v. *Buller, supra,* quoting from *Brown* v. *Brown,* 170 Cal. 1, 3 [147 P. 1168]: "Where the final decree of divorce makes no disposition of the community property, the parties become tenants in common of such property. If the cause of divorce was neither cruelty nor adultery, each will thereafter be the owner of an undivided one-half of the community property without further order of the court ..." (See, also, sections 146 and 147, Civil Code.)

Therefore, the question for decision is whether the trial

court in the instant case had power to award to plaintiff as her share of the community property a particular parcel of land rather than an undivided one-half thereof.

In a discussion of the matter of divorce without a division of the community property in McKay on the Law of Community Property, second edition, page 864, the following appears: "When there is no allegation as to community property and no decree or judgment on the point, the decided weight of authority is that the former spouses hold the community property as tenants in common, subject, of course, to the payment of the community debts. An action equitable in character, as that term is used in the common law, may be brought by either party to settle the affairs of the late community and divide its property. *The court in this action will not, however, possess those special powers as to division that are sometimes conferred on courts in divorce actions to depart from a mathematically equal division . . .*" (Citing *DeGodey* v. *Godey,* 39 Cal. 157; *Tabler* v. *Peverill,* 4 Cal. App. 671 [88 P. 994]; *Biggi* v. *Biggi,* 98 Cal. 35 [32 P. 803, 35 Am.St.Rep. 141]. (Emphasis added.)

In view of the foregoing, it appears to have been error on the part of the trial court to award to plaintiff any more than an undivided one-half interest in the lot in question.

The evidence adduced at the trial of the consolidated cases does not support the court's findings that appellant took title with knowledge that plaintiff claimed said lot as her share of the community and that he was not a bona fide purchaser thereof for value. In the circumstances presented by the instant litigation, through the mesne conveyances hereinbefore shown, appellant became the owner of an undivided one-half of said Lot 62 as the successor in interest of defendant John J. Buller. Reference is hereby made to the opinion in the companion case of *Buller* v. *Buller, supra,* for a discussion of the efficacy of a quitclaim deed to pass title to whatever interest is then owned by the grantor therein.

For the reasons stated, the judgment is reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied February 25, 1944.