Verone Marin **FEHLHABER**, Plaintiff-Appellee-Cross Appellant,

v.

Robert F. **FEHLHABER** as personal representative of **Fred Robert Fehlhaber**, deceased, Defendant-Appellant-Cross Appellee.

No. 79–2819.

United States Court of Appeals, Fifth Circuit.* Unit B

March 11, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Woodrow M. Melvin, Jr., Miami, Fla., R. Stephen Duke, Max C. Fink, Beverly Hills, Cal., for plaintiff-appellee-cross appellant.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge, and MARKEY[**], Chief Judge.

GODBOLD, Chief Judge:

Appellee Verone Fehlhaber brought this diversity of citizenship action in the United States District Court for the Southern District of Florida seeking recognition and enforcement of three judgments entered against her husband in a California action for legal separation. Appellant Fred Fehlhaber challenges the jurisdiction of the California court to render the judgments.

I.

Verone and Fred Fehlhaber were married in 1961 in New York. In 1967, six years later, they moved to Florida. Beginning in 1969 the Fehlhabers spent several months a year in California (annual vacation of four months each summer according to Fred Fehlhaber; seven or eight months residency a year with annual vacations to Florida according to Verone Fehlhaber). Although the chain of events surrounding the initial period of estrangement is hotly disputed, it is enough for this litigation that Verone went to California April 14, 1974, leaving Fred in Florida. The Fehlhabers agree that they separated May 15, 1974. Two days later, May 17, 1974, Verone filed an action in a California court for legal separation, spousal support, attorneys' fees, and a determination of her property rights. Fred was personally served in Florida June 5, 1974. Six days later, June 11, 1974, Fred filed a petition in Florida for dissolution of the marriage. Verone was personally served in California.

Paul, Weiss, Rifkind, Wharton & Garrison, Mark Charles Morril, Paul Johnson Newlon, Lewis Richard Clayton, New York City, Linwood C. Cabot, Fort Lauderdale, Fla., for defendant-appellant-cross appellee.

[**] Honorable Howard T. Markey, Chief Judge of the U. S. Court of Customs and Patent Appeals, sitting by designation.

On June 15 Fred made a special appearance under California Rules of Court 1234[1] contesting the court's jurisdiction over his person. The California court on July 15 found that Fred was a resident, even if he was not a domiciliary, of California and that his residency was a sufficient contact to allow California's long arm statute[2] to confer personal jurisdiction over him. Fred took no further action in defense of the cause and was declared in default July 22, 1974.

In the Florida case Verone never made an appearance, and the Florida court dissolved the Fehlhabers' marriage July 23, 1974. Meanwhile the California separation proceedings continued. On July 25, 1974, two days after the Florida divorce, the California court entered an order *nunc pro tunc* as of July 15 awarding Verone spousal support, attorneys' fees and costs *pendente lite* beginning August 1, 1974. The California court in a "Final Judgment of Legal Separation" on October 4 granted Verone $8,500 a month in support retroactive to August 1, $35,000 in attorneys' fees and $10,000 in court costs, while expressly reserving all issues regarding the division of property. On July 30, 1975 the California court entered a "Further Judgment" for the arrears on spousal support ($102,000), interest ($3,395), attorneys' fees and court costs ($2,615). On March 12, 1976 the California court entered the third judgment, "Further Judgment on Reserved Property Issues," awarding Fred all community and quasi-community property and awarding Verone $9,997,355.57[3] in cash to equalize the division.

With jurisdiction grounded upon diversity of citizenship, 28 U.S.C. § 1332, Verone brought an action in federal district court in Florida to enforce the three California judgments. Fred, to persuade the district court not to enforce the presumptively valid judgments, based his defense upon numerous challenges to the jurisdiction of the California court and to the validity of that court's judgments. The district court rejected all of Fred's challenges and, considering itself bound by the full faith and credit clause of the U. S. Constitution, granted summary judgment for Verone and entered judgment in her favor for $417,500 unpaid support from August 1, 1974; $45,000 unpaid suit costs and attorneys' fees; and $12,114,991.41, consisting of the unpaid cash award of $9,997,355.57 plus interest thereon of $2,081,390.09, and the unpaid attorneys' fees and costs of $30,000 plus interest thereon of $6,245.75.

On appeal Fred presents numerous defects in the California proceeding as grounds for not enforcing the California judgments. We reject the defects asserted with respect to the judgments of support payments and attorneys' fees and costs, and interest thereon, and therefore affirm the district court's awards based on these matters. We reverse the award of $9,997,-355.57 plus interest granted pursuant to the third California judgment because we hold that the California court lacked power to enter this judgment.

## II.

The full faith and credit clause of the United States Constitution[4] and 28

---

**1.** Rule 1234 provides in part:

In a proceeding under the Family Law Act, a respondent may serve and file a notice of motion to quash the service of summons on ground of lack of jurisdiction of the court over him . . . .

**2.** Cal.Civ.Proc.Code § 410.10 (West 1973) provides:

A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.

**3.** The California court used the figure $9,997,-355.57 at one point, but at another point rounded the award off to $9,997,356.00. The district court used the former figure. Neither party raises any question concerning this nominal discrepancy.

**4.** U.S.Const. art. IV, § 1, provides:

Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be provided, and the Effect thereof.

U.S.C. § 1738[5] generally require enforcement of a sister state court's judgments. We discuss first the principles under which one state court[6] may nevertheless deny effect to a prior foreign court's judgments based on the lack of jurisdiction in the original court. Justice Frankfurter's opinion for the Court in *Williams v. North Carolina*, 325 U.S. 226, 229, 65 S.Ct. 1092, 1094, 89 L.Ed. 1577 (1945), outlines a two-stage analysis. First, the full faith and credit clause does not take effect if the original court lacked personal or subject matter jurisdiction. *Id.* at 229, 65 S.Ct. at 1094. But a collateral examination of possible jurisdictional defects cannot be made, according to federal principles of res judicata, if these issues were litigated or could have been litigated in the original proceeding. *See Davis v. Davis*, 305 U.S. 32, 43, 59 S.Ct. 3, 7, 83 L.Ed. 26 (1938). At the second stage of analysis, assuming the full faith and credit clause does come into play, a state court is required to give a prior sister state court's judgment only "the same credit, validity, and effect ... which it had in the state where it was pronounced." *Williams, supra* 325 U.S. at 228, 65 S.Ct. at 1094. Therefore, if the original state would allow collateral attack of its judgment for lack of jurisdiction, a collateral attack may be made in a proceeding in another state.

Fred contends that the California court lacked subject matter jurisdiction to enter the three judgments sought to be enforced in the district court below. The district court ruled that because this issue could have been presented to the California court, Fred is barred by principles of res judicata from collaterally attacking the California judgments on this ground. We discuss this ruling in the context of each of the two stages of full faith and credit analysis.

■■ At the first stage, where federal principles of res judicata apply, if Fred were not served with process and did not appear in the California court, then he would not have had an opportunity to contest that court's subject matter jurisdiction and could therefore raise the issue here in a collateral attack. *Williams v. North Carolina, supra.* But if Fred had been a party and had generally appeared in the California proceeding, his failure to raise any jurisdictional issues would preclude his raising such issues in a collateral attack. *Davis v. Davis, supra.* This case falls between these two extremes. Fred was a party to the California proceedings. He was served with process, he contested this service, but the matter was decided against him.[7] Fred did not make a general appearance but only a special appearance to contest personal jurisdiction, as California procedure allows. Cal.Civ.Proc.Code § 418.10; Cal. Family Law Rule 1234. Moreover, after this special appearance Fred no longer participated in the proceedings and was subsequently declared in default.

Fred contends that despite his being a party a general appearance, as opposed to a special appearance, is required before he is to be considered to have had an opportunity to raise subject matter jurisdiction defects sufficient to preclude collateral attack. He further contends that once a default order was entered he was precluded from participating in the California proceedings.

■■ We need not decide the merit of these contentions, for we find that the second stage of full faith and credit analysis allows collateral attack of the California judgments. The full faith and credit clause requires only so much respect of a foreign judgment as the forum state would give the judgment. In California, under certain circumstances judgments are subject to collat-

---

**5.** 28 U.S.C. § 1738 provides in part:

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

**6.** This is a diversity action.

**7.** Fred no longer questions the propriety of the California court's exercise of personal jurisdiction over him.

eral attack for lack of subject matter jurisdiction despite the fact that the party now attacking the judgment was a party below or fully participated in the proceedings. One circumstance occurs where the jurisdictional defect appears affirmatively in the record:

> To be attackable collaterally for lack of jurisdiction the order must be void on its face and it is not void on its face unless the record affirmatively shows that the court was without jurisdiction to make the order. *Hogan v. Superior Court,* 74 Cal.App. 704, 241 P. 584. If the record discloses that the court had no jurisdiction to make the order of appointment, then it is void and can be attacked at any time ... or anywhere, directly or collaterally whenever it presents itself, either by parties or strangers.

*Texas Co. v. Bank of America Nat. Trust & Sav. Ass'n,* 5 Cal.2d 35, 53 P.2d 127, 130–31 (1935).[8] This rule does not allow a reopening of factual questions upon which jurisdiction turns that were determined by the original court, nor does it allow the taking of extrinsic evidence to prove lack of jurisdiction. *Estate of Estrem,* 16 Cal.2d 563,

107 P.2d 36 (1940). The jurisdictional defects discussed in the following section meet these requirements, and so they may be used in collateral attack to defeat enforcement of the California judgments.[9]

In summary, we need not decide whether federal principles of res judicata bar an examination of the California court's jurisdiction, because California law allows such an examination.[10]

### III.

We look to California law to determine if the California court had subject matter jurisdiction to enter its judgments.[11] See discussion and citations in *Farley v. Farley,* 227 Cal.App.2d 1, 38 Cal.Rptr. 357, 361–62, *cert. denied,* 379 U.S. 945, 85 S.Ct. 438, 13 L.Ed.2d 543 (1964). The three judgments were rendered in an action for legal separation brought by Verone pursuant to the California Family Law Act, Cal.Civil Code § 4000 *et seq.* Before the California court rendered any judgment, however, the July 23, 1974 Florida divorce decree dissolved the Fehlhabers' marriage.[12] In California "pri-

---

**8.** We emphasize in particular two portions of this quotation. Allowing attack by *parties* denotes the rule in California that a prior opportunity to raise the jurisdictional defect does not foreclose subsequent attack. *See Huff v. Mendoza,* 109 Cal.App.3d 677, 680, 167 Cal.Rptr. 348 (1980) (holding that an independent suit in equity may be brought to set aside a default judgment even though the plaintiff could have moved to set aside the judgment on the same grounds during the proceedings). Allowing *direct* attack at any time means that Fred could, if he chose, make a motion in California for relief from the judgment or bring an independent suit in equity to set aside the judgment. *See, e.g., Kass v. Young,* 67 Cal.App.3d 100, 136 Cal.Rptr. 469 (1977) (setting aside a default because the record showed that the plaintiff class had not been certified); *cf., Craft v. Craft,* 49 Cal.2d 189, 316 P.2d 345, 346 (1957) (granting relief from alimony award rendered in default because record disclosed that wife had agreed with husband before suit not to seek alimony).

**9.** *See* text and notes at notes 19–20 *infra.*

**10.** The dissent is inapposite because it addresses only federal law. In the California decision cited, *Lewis v. Lewis,* 49 Cal.2d 389, 317 P.2d 987 (1957), the issue was whether an Illinois

separate maintenance judgment was to be enforced in California. In holding that a prior Nevada divorce could not now be considered but should have been asserted in the Illinois forum, the California court relied on federal authority. Even if *Lewis* were read as addressed to state law, it would not contradict our conclusion for the issue in *Lewis* would have been Illinois law. Thus, in no event does *Lewis* express California law.

**11.** Unfortunately California does not have a procedure by which this court can certify to the courts of California the dispositive questions of law that must be answered in this case.

**12.** On July 25, 1974 the California court did enter an order *nunc pro tunc* as of July 15, 1974 awarding temporary alimony and costs and attorneys' fees. This attempt at retroactivity appears to be ineffectual, for the Family Law Code authorizes *nunc pro tunc* orders only in limited situations, Cal.Civil Code §§ 4513, 4515 (West 1970 & Supp.1981), of which this is not one. We need not conclusively decide this issue, however, since under our holding this order is effective regardless of its date.

or dissolution of the marriage is ... a complete defense to ... an action [for legal separation]." *DeYoung v. DeYoung*, 27 Cal.2d 521, 527, 165 P.2d 457, 460 (1946) (Schauer, J., concurring); *Hudson v. Hudson*, 52 Cal.2d 735, 344 P.2d 295, 299–300 (1959); *Patterson v. Patterson*, 82 Cal. App.2d 838, 187 P.2d 113, 115 (1948). This requirement of a marriage is a "jurisdictional prerequisite." *Colbert v. Colbert*, 28 Cal.2d 276, 169 P.2d 633, 635 (1946); *Knox v. Knox*, 88 Cal.App.2d 666, 199 P.2d 766, 773 (1948). Fred argues, therefore, that the California court was without subject matter jurisdiction to enter any of its orders, and that because the Florida decree appears in the record of the California proceeding, enforcement of the California judgments should be barred.

■■■■ This argument reasons too broadly. Ordinarily in California support and property rights incident to a marriage are determined in a proceeding brought pursuant to the Family Law Act for dissolution of marriage or for legal separation. *See* Cal.Civ.Code § 4800 (property rights), and § 4801 (support rights).[13] The rationale for the rule that marriage is a prerequisite to such actions is that a prior divorce moots the prayer for legal separation or divorce. *Hudson*, 344 P.2d at 299 (divorce). Once the marriage has been dissolved in another proceeding, then there is no longer any statutory basis for deciding property and support rights, for there is no statutory provision authorizing a separate suit to adjudicate these financial matters in isolation from adjudication of the status of the marital res. *See id.* This does not mean, however, that a nonstatutory action may not be pursued to determine these matters separately. Under the concept of "divisible divorce", a prior divorce does not automatically adjudicate property and support

rights; instead, these financial matters are litigable in an equitable proceeding separate from that in which the status of the "marital res" is adjudicated. *Hudson, supra* (alimony); *DeGodey v. DeGodey*, 39 Cal. 157 (1870) (property division); Comment, Post-Dissolution Suits to Divide Community Property: A Proposal for Legislative Action, 10 Pac.L.J. 825, 827 (1979).

■■ The question we must face, then, is whether the California action was a nonstatutory proceeding in equity, separate from the Florida proceeding that dissolved the marriage, to adjudicate support and property rights. We conclude that it was, despite its nominal title as a legal separation action. In her initial pleading Verone requested legal separation, spousal support, attorneys' fees and costs, "that property rights be determined as provided by law," and "that the court ... render such judgments and make such ... other orders as are appropriate." Thus, Verone did not simply make a request for legal separation but made a broad prayer for a variety of forms of relief. *Hudson, supra*, is an analogous case. There the wife sued for divorce and for alimony after her husband had obtained a divorce in Idaho. The court stated that the "prayer for divorce is moot" but that the "prayer for alimony remains to be adjudicated." 344 P.2d at 299. Similarly, here Verone's prayer for separation was mooted, but, following the precedent in *Hudson*, her request for other forms of relief survives as an equitable, nonstatutory proceeding. *Id.*

■■■■ There is no cognizable irregularity, then, in the California court's award of support payments and attorneys' fees and costs; the district court's judgment is therefore affirmed with respect to these matters.

**13.** Cal.Civil Code § 4800(a):

> [T]he court shall, either in its interlocutory judgment of dissolution of the marriage, in its judgment decreeing the legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community property and the quasi-community property of the parties ... equally.

Cal.Civil Code § 4801(a):

> In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable.

The prior statute was similar. *See* Cal.Civ. Code §§ 139, 146.

This does not end our inquiry, however, because Fred contends that the property division granted by the third judgment was improper. In California, property considered to be community property or quasi-community property (the "marital property" or "marital estate") is divided equally between the spouses in the event of a divorce. Cal.Civ.Code § 4800(a). To accomplish this division the California court determined the net value of the marital estate,[14] awarded all of the assets to Fred, and gave Verone a monetary judgment of close to $10 million as an offset.[15] This offset procedure is authorized by Cal.Civil Code § 4800(b)(1) "where economic circumstances warrant." Fred contends that the property division was beyond the power of the California court because the offset of the entire marital estate for a monetary judgment of one half of the estate's value is not authorized. We agree, although for reasons somewhat different from those advanced by appellant.[16] We hold that under California law a court acting in its nonstatutory jurisdiction to determine property rights separate from adjudication of the marital res may not employ an offset of assets as a method for dividing community and quasi-community property.

The case of *Buller v. Buller*, 62 Cal. App.2d 687, 145 P.2d 649 (1943) is on point. In *Buller* the wife, having obtained a divorce in a prior action on the ground of habitual intemperance, brought a separate action to determine her interest in the community property. The marital estate consisted of cattle, crops, and a plot of land. The husband had conveyed the cattle and crops, however, and so the trial court awarded the wife the plot of land as her share of the community property. On ap-

peal the court reversed, holding that the trial court only had the power to order an equal division of each asset. The court reasoned that where a prior divorce does not adjudicate property rights:

> "[a]n action equitable in character ... may be brought by either party to settle the affairs of the late community and divide its property. *The court in this action will not, however, possess those special powers as to division that are sometimes conferred on courts in divorce actions to depart from a mathematically equal division.*" ... In view of the foregoing, it appears to have been error on the part of the trial court to award to plaintiff any more than an undivided one-half interest in the lot in question.

145 P.2d at 652 (emphasis in the original); quoting McKay on the Law of Community Property, 2d ed., page 864).

The reasoning of *Buller* is that because the jurisdiction for a separate action for property division is a nonstatutory one it follows that the special statutory power of offset is not available under such jurisdiction. *Buller* was decided before the enactment of the present Family Law Act, Cal. Civ.Code § 4000, *et seq.*, however, so we must inquire whether its premise is still accurate before we embrace its conclusion.

There is no indication in the Family Law Act that a separate action for property division is now a statutory action. California Civil Code § 4800 enumerates the instances where marital property may be divided: "in [the court's] interlocutory judgment of dissolution of the marriage, in its judgment decreeing the legal separation of the parties, or at a later time if it expressly

---

14. Fred defaulted and so did not respond to Verone's requests for admissions as to the value of the marital estate. The California court's method of proof of value was to take these requests for admissions as admitted. We are not required to decide the propriety of this procedure.

15. The order of the court stated:

    The Court finds that due to respondent's failure to respond, all of the facts alleged in petitioner's request for admissions ... are

true, and that the community property has the value stated in Paragraph 23 thereof [$19,994,711.00]. It is therefore ordered ... that all of said community property is awarded to respondent. To equalize the division of community property, petitioner is awarded judgment against respondent in the amount of $9,997,356.00.

16. Fred points to the lack of findings of an economic necessity for the offset.

reserves jurisdiction." Although this section allows the division of property to be done separately from the adjudication of the marital res under certain conditions, none of those conditions is met here. First, § 4800 authorizes separate division of marital property only at a time later than the California court's judgment of dissolution or legal separation. Here, the judgment of legal separation by the California court was mooted by the prior Florida divorce; therefore, the procedural sequence prerequisite to a statutory separate property division never occurred. Second, § 4800 authorizes separate property division only where the court adjudicating the marital res "expressly reserves jurisdiction" to do so. Although the California court made such a reservation of jurisdiction, this too was after the Florida divorce and therefore outside of the court's dissolution or legal separation jurisdiction. Thus, the California court could not have been acting in its statutory "reserved jurisdiction" capacity when it made the property division.

■ A second possible statutory source for the California court's power to divide the Fehlhaber's marital property is Cal.Civ. Code § 4351, which provides plenary jurisdiction over all aspects of the marriage:

> In proceedings under this [Act], the superior court has jurisdiction to inquire into and render such judgments and make such orders as are appropriate concerning the status of the marriage, [child support and child custody], the support of either party, the settlement of the property rights of the parties, and the award of attorneys' fees and costs.

Section 4351 merely states that property rights may be settled in any action that is authorized by the Act. It begs the question, then, to contend that this provision itself authorizes an independent action to determine property rights. Instead, § 4351 is consistent with the conclusion that jurisdiction to settle financial matters is only ancillary to a legal separation action brought under the Act, and that absent a jurisdictional basis for the legal separation action, there is no foundation for § 4351's ancillary jurisdiction.

Finally, in the several cases brought for separate determination of property rights since the enactment of the Family Law Act, in none is it intimated that the court's jurisdiction is a statutory one. *See, e.g., Sangiolo v. Sangiolo,* 87 Cal.App.3d 511, 151 Cal.Rptr. 27 (1978); *Bridges v. Bridges,* 82 Cal.App.3d 976, 147 Cal.Rptr. 471 (1978); *Lewis v. Superior Court,* 77 Cal.App.3d 844, 144 Cal.Rptr. 1 (1978); *Kelley v. Kelley,* 73 Cal.App.3d 672, 141 Cal.Rptr. 33 (1977); *Irwin v. Irwin,* 69 Cal.App.3d 317, 138 Cal. Rptr. 9 (1977).

■ Like the statute under which *Buller* was decided, then, nowhere in the Family Law Act is a separate action for property division expressly or impliedly authorized. By contrast, separate actions for child support and child custody are allowed. Cal. Civ.Code §§ 4603, 4703. We must conclude, therefore, that in this case the property division was allowed only by the court's common law power to sit in equity over a separate action for property division.[17] The court's powers in such an action must be determined by common law. *Buller,* as an enunciation of the common law, has not been altered by the Family Law Act.[18] Therefore the California court exceeded its powers in deviating from a strict mathematical division of the community and quasi-community assets.

---

17. We note that a statutory action for partition may not be brought with respect to marital property. Cal.Code of Civil Pro. § 872.210(b). This section codifies the prior precedent of *Jacquemart v. Jacquemart,* 142 Cal.App.2d 794, 299 P.2d 281 (1956), and "promotes a policy to make the family law court the sole forum for resolution of disputes relating to marital property." Legislative Committee Comment to § 872.210, *id.* (West Supp.1979).

18. In particular, the broad provisions in the standardized Family Law pleading forms, *see* Family Law Rule 1281, are not specific enough to be construed as derogating the common law. Rather, they are readily incorporated within the *Buller* doctrine. Here Verone asked that "property rights be determined as provided by law," and the law provides that only exact division of assets is available.

Under California law the *Buller* defect in these proceedings is subject to collateral attack. The *Buller* court viewed the question as one of the "power" of the trial court to deviate from a precise division of assets. 145 P.2d at 652. Such questions of power, although they do not affect the subject matter of the court in a "fundamental sense," do state a jurisdictional defect that is subject to collateral attack. *Farley, supra*, 38 Cal.Rptr. at 360–64 (concerning method of awarding child support); *Vasquez v. Vasquez*, 109 Cal.App.2d 280, 240 P.2d 319, 320–21 (1952) (concerning unequal allocation of marital property).[19] In other words, while the California court did have jurisdiction to determine property rights, it did not have "jurisdiction . . . to act except in a particular manner, or to give certain kinds of relief." *Vasquez, supra*, 240 P.2d at 321. The offset, by exceeding the common law power of the court, "was in excess of the jurisdiction of the California court and not a mere error or irregularity in the proceeding." [20] *Id.* Second, this defect appeared on the face of the California court's order. Because the property division was entirely in the form of an offset, *see* note 11 *supra*, the entire property division is invalid and unenforceable.[21]

The district court's judgment is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings not inconsistent with this opinion.

HATCHETT, Circuit Judge, dissenting:

I respectfully dissent for the reasons expressed in the district court opinion as follows:

The first question before the Court involves a challenge to the Final Judgment of Legal Separation, the Defendant arguing that the Florida decree dissolving the parties' marriage was entitled to full faith and credit in the California proceeding and that, consequently, the California

---

**19.** *Farley*, 38 Cal.Rptr. at 361, 362:

The husband . . . makes a collateral attack on the Utah court's "jurisdiction" in the limited sense of the term, asserting lack of power to give the particular relief it did.

. . . .

Utah law, like that of California, has it that a judgment may be collaterally attacked when it discloses on its face an order in excess of jurisdiction.

*Vasquez*, 240 P.2d at 320:

A wrong decision made within the limits of the court's power is error correctable on appeal or other direct review, but a decision which oversteps the jurisdiction and power of the court is void and may be set aside directly or collaterally.

**20.** As discussed in part II, *supra*, the issue we face is whether the Florida district court should have considered this defect in the California proceeding in determining whether to give full faith and credit to the California judgment. We conclude that because, inter alia, the defect is of jurisdictional proportions it should have been considered despite a prior opportunity to raise it in the California court. The analysis of the dissent differs in that it views the alleged defect in the California proceeding as simply a contention that California had failed to give full faith and credit to the Florida divorce, a contention that may not be raised by way of collateral attack, evidently because it is "a mere error or irregularity in the proceeding." This misses the mark.

First, the parties do not contend that the Florida divorce was not given full faith and credit or that the divorce was invalid. Indeed, because the Florida decree only concerns the marital res and the California judgments sought to be enforced here concern only property and support rights, the California judgments in no way affect the validity of the Florida decree. Instead, the issue in dispute here is what effect the Florida divorce has on the jurisdiction of the California court. Were there grounds in the California court record to dispute the existence or validity of the Florida divorce, or had the California court actually adjudicated the Florida divorce as invalid, our analysis might differ. This is not the case, however.

Second, even assuming that the parties raise the issue of California's failure to give full faith and credit, this would not preclude Fred from making a jurisdictional argument as well. The offset defect discussed in text is more than a failure to give full faith and credit to the Florida divorce because the fact of this prior divorce, which fact is affirmatively disclosed by the record of the California proceeding, alters the state law powers of the California court in such a way that it may not grant an offset. It is this jurisdictional impact that California law gives to the Florida divorce that renders it cognizable here in defense to the California judgments.

**21.** We do not reach the merits of appellant's other contentions, for they are all addressed only to the validity of the property division.

court was without jurisdiction to proceed with an action for legal separation of the parties as there no longer existed a marriage upon which to ground a separation or the payment of separate maintenance. However, the record reflects unequivocably that the Defendant failed to raise the Florida decree as a defense in the California separation proceeding, and for this reason Defendant's argument must fail. The argument overlooks the fact that for the Florida decree to have been entitled to full faith and credit in the California proceeding, the Florida decree must have been raised as a defense in that cause. A party, subject to the jurisdiction of a second court, may not ignore the opportunity in the second court to raise a defense based upon a prior judgment of a sister state, and then attempt to invalidate the second court's judgments in a third action for enforcement by resurrecting the defense based upon the first court's judgment. *Morris v. Jones*, 329 U.S. 545 [67 S.Ct. 451, 91 L.Ed. 488] (1946); *Treinies v. Sunshine Mining Co.*, 308 U.S. 66 [60 S.Ct. 44, 84 L.Ed. 85] (1939); *Porter v. Wilson*, 419 F.2d 254 (9th Cir. 1969); *Southard v. Southard*, 305 F.2d 730 (5th Cir. 1962); *Helgesson v. Helgesson*, 196 F.Supp. 42 (D.Mass.1961); and *Lewis v. Lewis*, 317 P.2d 987, 49 Cal.2d 389 (1957). See also, [Midessa] *Medissa Television Co. v. Motion Pictures for Television*, 290 F.2d 203 (5th Cir. 1961); RESTATEMENT OF JUDGMENTS § 42, Comment a (1942); and Ginsburg, *Judgments in Search of Full Faith and Credit: The Last-In-Time Rule for Conflicting Judgments*, 82 *Harvard Law Review* 798 (1969). As the Court in *Morris v. Jones, supra*, stated:

> As to respondent's contention that the Illinois decree, of which petitioner had notice, should have been given full faith and credit by the Missouri court, only one word need be said. *Roche v. McDonald* [275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365] ... makes plain that the place to raise that defense was in the Missouri proceeding .... And what-

ever might have been the ruling on the question, the rights of the parties could have been preserved by a resort to this Court, which is the final arbiter of questions arising under the Full Faith and Credit Clause .... In any event the Missouri judgment is res judicata to the nature and amount of petitioner's claim as against all defenses which could have been raised.

*Id.* [329 U.S.] at 552 [67 S.Ct. at 456].