730 So.2d 858 (1999)
Deborah ATWELL, Appellant/Cross-Appellee,
v.
George W. ATWELL, Appellee/Cross-Appellant.
Nos. 98-600, 98-1888 and 98-2507.
District Court of Appeal of Florida, First District.
April 30, 1999.
Laura E. Keene and Ross A. Keene, of Beroset & Keene, Pensacola, for Appellant/Cross-Appellee.
E. Jane Brehany, Pensacola, for Appellee/Cross-Appellant.
PER CURIAM.
Deborah Atwell challenges a judgment that annulled her marriage to George Atwell, who cross-appeals orders on child support and attorney's fees. We reverse the annulment and, for reasons set out below, we do not address the cross-appeal.
The facts are these: Deborah Atwell was married in California in 1974 to Thomas Gary Favara. In 1978, she commenced divorce proceedings against Mr. Favara in California, and, pursuant to stipulation, received an interlocutory judgment of dissolution of marriage on August 6, 1980. This judgment was not final and would not become final until one of the parties made a proper motion. Neither party took any action at that time.
Deborah Favara and George Atwell had been dating during the pendency of her divorce proceedings, and were married in Pensacola, his home town, on April 9, 1981. Shortly after their wedding, they returned to *859 California, where George Atwell, then a U.S. Navy physician, was stationed.
Almost immediately upon her return to California, Mrs. Atwell became involved in a legal dispute with Mr. Favara and his girlfriend, and hired legal counsel. Her lawyer discovered that the interlocutory dissolution had never been made final, and moved the California court to enter the final dissolution of the Favara marriage nunc pro tunc, pursuant to a California statute.[1] The California court entered an order April 28, 1981, but made it nunc pro tunc to November 6, 1980.
For 14 years, Dr. and Mrs. Atwell lived together, purchased and owned property by the entireties and filed joint income tax returns. Dr. Atwell adopted Mrs. Atwell's child from her marriage to Mr. Favara, and the couple had two other children. In 1995 Dr. Atwell instituted dissolution of marriage proceedings, and approximately one year later filed a petition for annulment, contending that Deborah Atwell was not yet divorced at the time she married him, so they were never legally married.
The trial court ultimately agreed with Dr. Atwell and granted the annulment.[2] The court ruled that, while the parties believed that they were entering into a valid marriage in Florida, their marriage was void because Mrs. Atwell had not yet moved the California court to make final her dissolution from Mr. Favara.
After granting the judgment annulling the marriage, the trial court took up the issues of child support and alimony. The parties had previously entered into a mediated agreement that called for Dr. Atwell to pay $2,100 per month in child support and $4,300 monthly in alimony should the trial court not grant the annulment. In the event of an annulment, only the property division and child support would be binding.
The trial court ruled it was "precluded" from awarding alimony to Mrs. Atwell because of the mediated agreement and also because she was not entitled to alimony, as she was still married in California at the time she was married in Florida and could "not be designated an innocent party." The trial court did, however, increase the child support from $2,100 monthly, ultimately setting it at $3,177.38 monthly (the recalculation was due, in part, to the fact that Mrs. Atwell would not be receiving alimony).
The court also awarded Mrs. Atwell attorney's fees for an appeal, ordering $9,000 to be paid to Mrs. Atwell's attorney.
Mrs. Atwell challenges the annulment, arguing that the trial court erred in not granting full faith and credit to the California nunc pro tunc judgment and pointing to the negative consequences of annulling a 16-year marriage, which include the fact that it illegitimizes the two children born of their marriage, casts doubt on the validity of the adoption (which was premised on Dr. Atwell being married to the child's mother), and could have serious tax and military benefit ramifications. Dr. Atwell cross-appeals the orders setting child support and awarding attorney's fees. Because we agree with Mrs. Atwell that the trial court erred in not giving full faith and credit to the California judgment of dissolution of marriage, and therefore erred in granting the annulment, we decline to address the cross-appeal.
The trial court analyzed the issue of whether the marriage was valid by inappropriately *860 applying Florida law without regard to the action of the California court. It reasoned that Mrs. Atwell would not have been considered divorced under Florida law, and was therefore legally incapable of entering into a valid marriage at the time.
By concluding that Mrs. Atwell could not have received a nunc pro tunc divorce under Florida law, the trial court overlooked the main point, which is that in fact and by law California had declared Mrs. Atwell's first marriage dissolved as of November 6, 1980. Under the United States Constitution, state courts are bound to give full faith and credit to valid judgments rendered in other states, irrespective of whether the law of the forum state would have permitted the same result.
The Constitution states the proposition quite succinctly: "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. To give full faith and credit to a foreign judgment is to give it the same effect that the foreign state would have given it. See Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). As noted by the 11th Circuit, Williams established "a two-stage analysis" for applying the Full Faith and Credit clause. Fehlhaber v. Fehlhaber, 669 F.2d 990, 994 (5th Cir.1982).
First, the full faith and credit clause does not take effect if the original court lacked personal or subject matter jurisdiction. But a collateral examination of possible jurisdictional defects cannot be made, according to federal principles of res judicata, if these issues were litigated or could have been litigated in the original proceeding. At the second stage of analysis, assuming the full faith and credit clause does come into play, a state court is required to give a prior sister state court's judgment only "the same credit, validity, and effect... which it had in the state where it was pronounced."
Id. at 994 (citations omitted).
Under that analysis, it is clear that full faith and credit should have been given the California judgment and official records, which show that the marriage of Deborah and Thomas Gary Favara was dissolved as of November 6, 1980, some five months prior to the Atwells' marriage in Florida. California had jurisdiction over the subject matter and over the parties (it is undisputed that the Favaras were domiciled there) and California courts would recognize the Favara divorce as being effective on November 6, 1980. Therefore, the courts of this state and all others must recognize that as the official date. See, e.g. Estate of Storer, 14 Wash.App. 687, 544 P.2d 95 (1975)(giving full faith and credit to California judgment of divorce granted nunc pro tunc).
Moreover, it appears that Mrs. Atwell's situation was precisely that which the California law was intended to address. One California court expressed the rationale of permitting nunc pro tunc divorces as follows:
The purpose was to validate otherwise void marriages and thus relieve the parties to such marriages from the stigma and other consequences of bigamous relationships into which they might innocently fall by reason of oversight or neglect to have a final decree entered. Mere entry of the nunc pro tunc judgment acts retroactively to restore them to the status of single persons and at the same time gives them and their later acquired spouses legal married status. It is all strictly artificial, but so is the semidivorced status occupied by the holders of an interlocutory decree.
In Re Hughes' Estate, 80 Cal.App.2d 550, 182 P.2d 253, 256 (1947).
This matter is very simple when considered in light of the official records of California and Florida, which show that Deborah Atwell was married to Mr. Favara in 1974, was divorced from him in 1980, and was married to George Atwell in 1981. The trial court should have looked no further than that.
It is axiomatic that a valid dissolution of marriage, granted by a court of competent jurisdiction, removes legal incapacity to marry. The marriage of Deborah and George Atwell thus was valid as a matter of law, and this cause must be remanded for the trial court to take up the dissolution action.
*861 Upon remand, the trial court will have to readdress the questions of alimony and child support. The rationale for denying alimony was that the parties had never been validly married. Obviously, our holding that their marriage was valid has the effect of vitiating that rationale. Moreover, if Mrs. Atwell is to receive alimony, her income may be substantially changed and the calculations regarding child support may need to be readdressed. Thus, we leave it to the trial court to determine the effect of the parties' mediated settlement agreement.
As to the cross-appeal on attorney's fees, we note that Dr. Atwell's argument is premised on the now unsupportable position that fees were inappropriate because the marriage was not valid. Moreover, we note that such an order is permitted under section 61.16, Florida Statutes. However, in light of the fact that our decision may change the parties' financial status, and not wishing to intrude on the discretion of the trial court, we decline to reach this issue, as well.
The judgment below is reversed and the matter is remanded for proceedings consistent with this opinion.
JOANOS, MINER and DAVIS, JJ., CONCUR.
NOTES
[1] The entry of nunc pro tunc orders of divorce apparently is a longstanding practice in California. Presently, it is expressed in California Family Code section 2346(a), which states in pertinent part:

If the court determines that a judgment of dissolution of the marriage should be granted, but by mistake, negligence, or inadvertence, the judgment has not been signed, filed, and entered, the court may cause the judgment to be signed, dated, filed, and entered in the proceeding as of the date when the judgment could have been signed, dated, filed, and entered originally....
Subsection (d) provides, in pertinent part: "Upon the entry of the judgment, the parties have the same rights with regard to the dissolution of marriage becoming final on the date that it would have become final had the judgment been entered upon the date when it could have been originally entered."
[2] The court below employed a curious procedure wherein it granted Dr. Atwell's motion for summary judgment on the petition for annulment, and then held an evidentiary hearing to consider Mrs. Atwell's defenses. It entered a Final Judgment of Annulment after this hearing.